[605 NYS2d 749]

KATHERINE HARTOG, Respondent-Appellant, v ALBERT HARTOG, Appellant-Respondent.

First Department, December 28, 1993

APPEARANCES OF COUNSEL

*Stanley Plesent* of counsel *(Stanley D. Heisler* with him on the brief; *Squadron Ellenoff Plesent Sheinfeld & Sorkin,* attorneys), for respondent-appellant.

*Herman Harris Tarnow* of counsel *(Gretchen Leitzell Johnston* with him on the brief; *Tarnow & Cott,* attorneys), for appellant-respondent.

## OPINION OF THE COURT

KASSAL, J.

This appeal presents, *inter alia,* the propriety of an award to the nontitled spouse of a share of the other spouse's interest in the appreciation during the marriage of certain assets, which are concededly separate property. It also ad-

dresses the appropriateness of an award of lifetime mainte-
nance.

The parties were married on November 2, 1968 when plain-
tiff wife was 28 years old, and defendant husband was 38
years old. This was a second marriage for both parties and
neither party had any children by their former spouses. There
are two children of this marriage, Erik Albert Hartog, born
December 24, 1969 and Kenneth Lewis Hartog, born June 22,
1971, both emancipated.

The wife was 51 years old at the time of trial. She had
obtained a B.A. from New York University in 1963. When the
parties married, the wife worked in the field of advertising at
Compton Agency, earning under $10,000 a year. She left
Compton Agency when she became pregnant with Erik and,
during the next 11 years, she did occasional freelance work,
wrote a novel and three short stories. From 1980 to 1985, the
wife worked full time as a copywriter and editor for Ogilvy &
Mather earning up to $27,500. In 1985, she was diagnosed as
having cancer in her right breast and had a modified radical
mastectomy. The next year, she had the other breast removed.
Plaintiff's health improved, and in 1990, she started a song-
writing business. As of the date of trial, plaintiff had expended
more than $5,000 in that endeavor, but had not earned any
income. During the marriage, the wife had primary responsi-
bility for the household and childcare.

The husband was 61 years old at the time of trial. He had
obtained a B.A. and a J.D. from New York University, but
never practiced law. Instead, throughout the marriage, he
worked in the family jewelry business, F. Staal, Inc. (hereinaf-
ter F. Staal), and became its president in 1985. He and his
brother, Jack Hartog, each own 50% of the shares of F. Staal.
The husband is also a director and shareholder of another
family business, Hartog Trading Corporation (hereinafter
Trading), in which he and his brother each own 50% of the
stock. Shortly before the marriage, Trading created a division
known as Hartog Foods International, Inc. (hereinafter Foods).
The husband and his brother each own 25% of the stock of
Foods. Although the husband is an officer and shareholder of
both Trading and Foods, it is undisputed that he spends
virtually all of his working hours at F. Staal. The husband
does earn a substantial salary and bonuses from the three
family businesses, and participates in their pension plans.
Throughout, he has been the primary income earner for the
family. In the course of this litigation, the husband was

diagnosed with terminal metastisized prostate cancer with a very poor prognosis.

During the marriage, the parties purchased an eight-room cooperative apartment on East 79th Street in Manhattan's Upper East Side and a country house in Westport, Connecticut. In spite of the substantial income that accumulated during the parties marriage, they lived modestly. The parties maintained largely separate finances during the marriage and, except for one joint checking account, had separate banking and brokerage accounts.

### Judgment After Trial

The court granted the wife a divorce on the ground of abandonment. In dissolving the marriage, the court determined the respective rights of the parties to their separate and marital property. After a trial on the financial issues, the trial court equitably distributed the marital property. The court annexed four different schedules of marital property covering four different options which were given to the wife. In each instance, the schedule sets forth the wife's distributive award, reflecting adjustments for any residence(s) retained: "A"—Sell both residences ($1,692,237); "B"—Wife sells Westport, Connecticut, house and retains Manhattan apartment ($1,308,097); "C"—Wife sells Manhattan apartment and retains Westport, Connecticut, house ($1,481,187); and "D"—Wife retains both residences ($1,097,047). The distributive award encompasses marital property, including securities and bank deposits, and portions of the appreciation on the husband's three family businesses.

With respect to the increased value of the husband's share of the family businesses, the court held that the following constitutes marital property: (1) 100% of the increased value of the husband's 50% share of F. Staal (100% of $412,500); (2) 25% of the increased value of the husband's 50% share of Trading (25% of $2.3 million totalling $575,000); and (3) 25% of the increased value of the husband's 25% share of Foods (25% of $2,747,500 totalling $686,875). Accordingly, the wife's 50% share of the appreciation of the three family owned businesses, deemed to be marital property, constitutes $837,187.50.

With respect to other items held to be marital property, the court held that the wife was entitled to one half of the following: (1) bank accounts in the husband's name totalling

$188,599; (2) brokerage accounts in the husband's name totalling $911,885; (3) stocks and bonds in the husband's safe deposit box totalling $643,172; (4) the pro rata portion of the husband's annual bonuses from Trading and Foods, which accrued prior to commencement of the action and which were paid to him thereafter, totalling $119,997; (5) the parties' Etruscan statuary valued at $45,250.

The court's judgment further provides that, in addition to the net distributive award, the wife's 50% interest in the husband's pension plans and an IRA account valued at $1,360,280 as of February 1, 1989, will be distributed pursuant to a Qualified Domestic Relations Order which the court signed contemporaneously with the judgment.

Finding that the wife was not likely to earn a substantial income and/or become self-supporting and that she would not be able to live on the interest alone from the equitable distribution award, the trial court also awarded her permanent maintenance of $650 per week ($2,816.66 per month) until her death. In addition, the husband was directed to maintain life insurance on his life for the benefit of the wife in the sum of $1 million to secure these payments. Additionally, the judgment provides that there is a $1 million lien on the husband's estate if the husband fails to maintain the life insurance policy.

## Discussion

On appeal, the parties complain about various aspects of the court's distributive award. First, the husband argues that the court erred in deeming any portion of his interest in the appreciation of Trading and Foods as marital property since he was totally uninvolved in the operation of these companies. The wife, on the other hand, argues that the court erred in giving her only 12.5% of the appreciation in the husband's interests in Trading and Foods, insisting that her significant contributions as a spouse, parent and homemaker during a 20-year marriage justified an award of 50% of the appreciation of his interests therein.

In *Price v Price* (69 NY2d 8, 17), the Court of Appeals held that "where separate property of one spouse has appreciated during the marriage and before execution of a separation agreement or commencement of a matrimonial proceeding and where such appreciation was 'due in part' to the contributions or efforts of the nontitled spouse as parent and home-

maker, the amount of that appreciation should be added to the sum of marital property for equitable distribution (§ 236 [B] [5])." Conversely, "where the appreciation is not due, in any part, to the efforts of the titled spouse but to the efforts of others * * * the appreciation remains separate property, and the nontitled spouse has no claim to a share of the appreciation" (supra, at 18). Although we agree, and the parties do not dispute, that the trial court correctly held that the husband's entire interest in the appreciated value of F. Staal constitutes marital property, we find, based upon the trial court's explicit findings of fact, that all of the husband's interest in the appreciated value of Trading and Foods constitutes his separate property, not subject to equitable distribution.

Significantly, the trial court made the following findings of fact with regard to the wife's entitlement to a portion of the husband's interest in the appreciated value of the family businesses. The court found that the husband spent six days a week devoting full working days at F. Staal. In contrast, the court stated "there was nothing to show any daily or even weekly contact between the husband and Trading." Further, the court found that the husband spent "little, if any, of his daily or weekly time on the day to day operations of [Foods]." The husband's brother, Jack Hartog, directed the day-to-day management and operations of Trading and Jack Hartog and Mike Rahal were active in the day-to-day operations of Foods. The husband's minimal role in the operations of Trading and Foods included being consulted on important issues regarding the family businesses and his attendance at a few Board of Directors' meetings.

To award the wife any share of the appreciation of Trading and Foods, the trial court must have concluded that the husband's minimal role in the operations of Trading and Foods contributed in some measure to the appreciation of those companies. We disagree and conclude, based upon the court's explicit factual findings, that the husband's extremely limited involvement in the operations of Trading and Foods, in contrast to his active personal management of F. Staal, cannot be considered the type of activity which contributed in any quantifiable measure to the increased value of those companies. Accordingly, contrary to the trial court's holding and consistent with the court's findings of fact, the wife is not entitled to any portion of the husband's interest in the increased value of Trading and Foods, assets which, with respect

to the husband's contributions to the appreciation thereof, are purely passive.

Simply stated, the wife's contribution as a parent and homemaker in the "economic partnership" did not indirectly contribute to the increased value of those companies. This is in sharp contrast to her role with respect to the increased value of F. Staal. In *Price (supra,* at 16, n 2), the Court of Appeals recognized that the contributions of a spouse as parent and homemaker may be considered in treating an appreciation in separate property as marital property where "a homemaker aids in making the spouse involved in business successful by permitting him/her the freedom and assistance to devote energy to financial endeavors" (emphasis deleted). During most of the marriage, the husband devoted six full working days to the management of F. Staal which unquestionably enhanced the value of that company during the marriage. Thus, under Domestic Relations Law § 236 (B) (1) (d) (3), the wife is entitled to a share of the appreciated value of F. Staal since her contribution as a parent and homemaker enabled her husband to devote his energies to that company. On the other hand, the appreciated value of Trading and Foods was due to the efforts of others, and, therefore, the wife is not entitled to a share of the appreciated value of these companies *(Price v Price, supra,* at 18). Accordingly, the distributive award must be reduced by $630,937.50, representing one half of 25% of the husband's interest in Trading and Foods, which the trial court had awarded to the wife.

The trial court also erred in classifying as marital property a pro rata portion of the annual bonuses the husband earned from Trading and Foods which accrued prior to commencement of this action and were paid to him after commencement. In deeming the bonuses to be marital property, the trial court drew an analogy to the situations in *Richmond v Richmond* (144 AD2d 549), dealing with severance and lump-sum pension payment, and *Majauskas v Majauskas* (61 NY2d 481), relating to vested pension benefits. Severance and vested pension payments are a form of deferred compensation which are generally considered to be marital assets. Bonuses, on the other hand, are usually considered a form of earned income and were already considered and factored into the husband's current support obligations. Thus, for the court to regard these bonuses as marital assets, subject to equitable distribution, amounts to double-dipping. Accordingly, the distributive award must be reduced by $59,998,

representing one half of the total bonuses paid by Trading and Foods to the husband which accrued prior to commencement and were received and deposited by him after commencement.

■ There is no merit to the husband's argument that the court erred in determining that all the stocks and bonds he kept in a safe deposit box constituted marital property. The record supports the court's conclusion that the husband failed to sustain his burden to prove that certain stocks and bonds in his vault were gifts from his parents, particularly since the husband admittedly commingled gifts with marital assets (see, Pullman v Pullman, 176 AD2d 113). Furthermore, the record shows, as the wife argues on appeal, that the husband also failed to sustain his burden to prove that his Thomas McKinnon account constitutes his separate property. There was unrebutted testimony offered by the husband's broker that the husband merged his Thomas McKinnon "Special Account", which, he alleged, contained the husband's separate property, with his personal Thomas McKinnon brokerage account, which constitutes marital property. Assets commingled with other property acquired during the course of a marriage are presumed to be marital property (Pullman v Pullman, supra). Accordingly, the wife is entitled to receive an additional $197,585, representing one half of the husband's Thomas McKinnon account.

■ In addition to contending about various aspects of the court's classification of property as being separate or marital, the husband argues that the court erred in failing to take into consideration the tax impact upon him resulting from the sale of his interests in the family businesses and his securities to satisfy the distributive award. As the husband aptly notes, by awarding a distributive award to the wife of more than $1 million, the court placed the entire tax burden upon him to satisfy that award. This substantially reduces the husband's share of marital property, which is simply unfair since he has to sell several assets to do so. The wife argues that the court properly computed the distributive award without regard to tax consequences since the husband offered "no probative evidence concerning the potential tax consequences of the sale of his business interests" (see, Heine v Heine, 176 AD2d 77) and "no evidence whatever * * * from which the trial court could determine the tax consequences of any sale of his securities" (see, Malin v Malin, 172 AD2d 721). However, we conclude that the husband's trial testimony that he intended to sell the family businesses and to live off the interest

constituted credible evidence from which the trial court could have found that the distributive award should be reduced by an amount equalling the wife's equitable share of the resulting tax liability.

In any case, since virtually all of the marital assets are nonliquid, and the judgment does not allow for a distribution in kind, a good portion of the marital assets must be sold in order for the husband to satisfy the distributive award. Under the circumstances, it is only fair that the tax liability be borne in the same proportion as each party's share of the property sold. Accordingly, we hold that the distributive award shall be reduced by the wife's equitable share of the taxes paid on the profit from sales of marital assets, including the husband's securities and his interest in F. Staal.

█ We also agree with the husband that the award of maintenance to the wife for the duration of her life violates the Domestic Relations Law. Under Domestic Relations Law § 236 (B) (1) (a), maintenance is defined as: "payments * * * awarded by the court in accordance with the provisions of subdivision six of this part, to be paid at fixed intervals for a definite or indefinite period of time, *but an award of maintenance shall terminate upon the death of either party* or upon the recipient's valid or invalid marriage." (Emphasis added.) The court's order fails to provide that maintenance shall terminate upon the death of either party or upon the wife's remarriage.

Moreover, in awarding the wife lifetime maintenance, the court overlooked the fact that the wife is clearly capable of becoming self-supporting. In *Harmon v Harmon* (173 AD2d 98, 108) we stated, "[l]ifetime maintenance is appropriate only where a spouse is incapable of future self-support or has clearly subordinated a career to act as homemaker and parent *(see, Zelnik v Zelnik,* 169 AD2d 317; *Brownstein v Brownstein,* 167 AD2d 127, *lv denied* 77 NY2d 806), has no obvious skills or training *(see, Iacobucci v Iacobucci,* 140 AD2d 412) or is mentally or physically ill *(see, Goldfarb v Goldfarb,* 173 AD2d 355)." The wife is a 51-year-old woman with a college degree who has a record of success in the field of advertising. Although she left her lucrative position at Ogilvy & Mather after her breast cancer, her health has greatly improved and she has even attempted to start a songwriting business. The husband, on the other hand, is forced to retire due to metastasized prostate cancer which threatens to shorten his life significantly. In a report dated December 11, 1991, the husband's

physician stated his opinion that the husband had no more than two years to live. Under these circumstances, we believe that an award of rehabilitative maintenance to enable the wife to achieve economic independence is appropriate (Domestic Relations Law 236 [B] [6] [a]; *Harmon v Harmon, supra,* at 108-109). Accordingly, we modify the judgment to provide that the maintenance award of $650 per week shall be limited to five years from July 13, 1992, the date of judgment.

■ Finally, we agree with the husband that the trial court erred in directing that he maintain a life insurance policy in the amount of $1 million for the benefit of the wife or a charge of $1 million on his estate if he fails to maintain such a policy. Although the court's decision states that the husband "is to maintain his existing $1,000,000 life insurance policy with the wife as beneficiary to secure [maintenance] payments," the trial evidence does not demonstrate that such a policy existed prior to the entry of judgment. It is beyond dispute that the husband's medical condition precludes him from obtaining any life insurance, let alone a policy for $1 million.

In any case, the requirement that the husband obtain a life insurance policy to secure maintenance payments after his death violates Domestic Relations Law § 236 (B) (8) (a), which provides in pertinent part: "The court may also order a party to purchase, maintain or assign a policy of insurance on the life of either spouse, and to designate either spouse or children of the marriage as irrevocable beneficiaries during a period of time fixed by the court. The interest of the beneficiary shall cease upon the termination of such party's obligation to provide maintenance, child support or a distributive award, or when the beneficiary remarries or predeceases the insured." Reading this section in conjunction with Domestic Relations Law § 236 (B) (6) (c), which provides that an award of permanent maintenance shall terminate upon the death of either party or upon the recipient's remarriage, it is clear that that court lacked authority to order the husband to obtain a $1 million life insurance policy to secure maintenance payments after his death. Accordingly, that part of the judgment requiring the husband to maintain a $1 million life insurance policy, and charging a lien on his estate should he fail to maintain such a policy, is stricken.

Accordingly, the judgment of the Supreme Court, New York County (Jacqueline W. Silbermann, J.), entered on July 12,

1992, should be modified, on the law and on the facts and in the exercise of discretion, to provide that the distributive award to the wife shall be reduced by the following (a) $630,937.50, representing one half of 25% of the husband's interest in Trading and Foods, (b) $59,998, representing one half of the total bonuses paid by Trading and Foods to the husband which accrued prior to commencement of the action and were received and deposited by him after commencement, and (c) an amount equal to the wife's equitable share of the tax liability borne by the husband resulting from the sale of marital assets; that the distributive award include an additional $197,585, representing one half of the husband's Thomas McKinnon account; that the award of spousal maintenance in the amount of $650 per week shall be limited to five years from the date of judgment, retroactive to July 13, 1992; and that the provisions directing the husband to maintain a $1 million life insurance policy for the benefit of the wife and charging a $1 million lien on his estate should he fail to maintain such a policy, be deleted and, except as thus modified, affirmed, without costs and disbursements.

SULLIVAN, J. P., Ross, RUBIN and NARDELLI, JJ., concur.

Judgment, Supreme Court, New York County, entered July 12, 1992, modified, on the law and on the facts, and in the exercise of discretion, to provide that the distributive award to the wife shall be reduced by the following (a) $630,937.50, representing one half of 25% of the husband's interest in Trading and Foods, (b) $59,998, representing one half of the total bonuses paid by Trading and Foods to the husband which accrued prior to commencement of the action and were received and deposited by him after commencement, and (c) an amount equal to the wife's equitable share of the tax liability borne by the husband resulting from the sale of marital assets; that the distributive award include an additional $197,585, representing one half of the husband's Thomas McKinnon account; that the award of spousal maintenance in the amount of $650 per week shall be limited to five years from the date of judgment, retroactive to July 13, 1992; and that the provisions directing the husband to maintain a $1 million life insurance policy for the benefit of the wife and charging a

$1 million lien on his estate should he fail to maintain such a policy, be deleted and, except as thus modified, affirmed, without costs and disbursements.