■ Edward J. Sivigny, Jr., Appellant, v Karen F. Sivigny, Respondent. [624 NYS2d 120] —Judgment, Supreme Court, New York County (Phyllis Gangel-Jacob, J.), entered April 8, 1993, which, after nonjury trial, granted defendant a divorce on the grounds of abandonment, and *inter alia,* awarded defendant permanent maintenance of $275 a week, child support of $80 per week retroactive to May 15, 1989 through the child's twenty-first birthday, a distributive award of $30,851 and counsel fees of $15,400, unanimously modified, without costs, on the law and the facts, to the extent of reducing the distributive award to $29,185, and otherwise affirmed.

" '[L]ifetime maintenance is appropriate only where a spouse is incapable of future self-support or has clearly subordinated a career to act as homemaker and parent * * * has no obvious skills or training * * * or is mentally or physically ill.' " *(Hartog v Hartog,* 194 AD2d 286, 295 [quoting *Harmon v*

*Harmon,* 173 AD2d 98, 108], *lv granted* 83 NY2d 761). At the time of trial (1989), defendant was approximately 45 years old. While college educated, defendant has limited work experience, having only worked for short periods of time as a receptionist and personnel recruiter during the 27-year marriage. It is clear that defendant's lack of marketable skills resulted from her decision to subordinate her own career to support plaintiff while he was attending college and to assume the role of full-time homemaker and caretaker for the parties' two sons. Moreover, defendant suffers from chronic depression, agoraphobia, panic attacks and has vision problems which prevent her from driving a car or engaging in employment involving close eye-hand work. As a result of all these factors, her earning capacity is limited to between $8,000 and $14,000 annually. In contrast, plaintiff, 47 years of age at the time of trial, has extensive experience in the advertising field, having earned approximately $82,000 at his last job from which he was terminated in 1988. While he only earned $25,000 to $30,000 from free lance employment at the time of trial, the court, whose credibility assessments are entitled to great weight, found that with honest effort plaintiff could have found employment in the four years since his termination at twice the salary he had been earning. The court's conclusion was not unfounded inasmuch as plaintiff's testimony with respect to his diligent efforts to find suitable employment was unconvincing. Based upon a balancing of these factors, and the unlikelihood that defendant can become self-supporting, the court properly awarded defendant permanent maintenance (Domestic Relations Law § 236 [B] [6]; *see, Jones v Jones,* 133 AD2d 217, 218; *Reingold v Reingold,* 143 AD2d 126, 127, *lv dismissed* 73 NY2d 851).

Plaintiff contends that the $80 weekly child support to son Robert retroactive to May 15, 1989 and payable until Robert's twenty-first birthday (February 14, 1993) was improper since there was no proof adduced that defendant had not previously been receiving child support. Plaintiff argues that the court failed to give him credit for the support payments made by him since April 15, 1989. The court properly found that plaintiff, at least since 1989, had improperly paid child support with marital assets, rather than paying support from his own earnings *(see,* Domestic Relations Law § 240 [1-b]), and therefore the award was proper. Further, since plaintiff did not pay for child support from his own earnings, he was not entitled to any credit for the sums paid for child support as contemplated by Domestic Relations Law § 236 (B) (7) (a).

Plaintiff's claim that he made withdrawals from his own funds for support of defendant and the children was corroborated only by plaintiff's self-serving exhibits. Moreover, schedule sheets for maintenance and child support payments supplied by plaintiff for 1987 and 1988 indicate that many payments were made from joint funds. In this connection, the IAS Court aptly noted that schedule sheets were misleading since the payments allegedly made from separate sources were funds which in fact had been removed from the parties' joint account and placed in plaintiff's separate account.

Contrary to plaintiff's claim, the court did not err in crediting the uncontroverted testimony of defendant's psychiatrist. Further, plaintiff's contention that the court demonstrated unfair bias towards defendant is without foundation. The court's comments were merely directed toward clarifying counsels' inquiries and ensuring that only relevant admissible testimony was elicited. Further, the court's admonishment of counsel at one point during the proceedings was proper inasmuch as counsel made a derisive remark about defendant.

Plaintiff's claim that the court did not consider the tax consequences of the distributive award is belied by the court's statement in its decision that a court must consider the factors enumerated under Domestic Relations Law § 236 (B) (5) (d) in deciding the issue of equitable distribution. Moreover, contrary to plaintiff's claim, inasmuch as the funds in the parties' joint account totalling $41,693 were in existence prior to the commencement of the marital proceeding, the court properly included that sum in its calculation of the distributive award, despite the fact that plaintiff used the funds to support himself, his wife and his children (Domestic Relations Law § 236 [B] [1] [c]). Nevertheless, it appears that the downpayment of $3,332 for the family car should not have been considered to be a marital asset since the joint funds used for the downpayment were reimbursed by plaintiff's mother and then returned to a joint fund. Thus, the distributive award plaintiff was directed to pay should be reduced by one-half that amount ($1,666). The value of the car should have been ascertained and then included as a marital asset, since testimony indicated that the car was a gift to both plaintiff and defendant. However, no evidence was elicited with respect to the car's value and thus it may not be considered as marital asset to be divided between the parties.

Lastly, in light of defendant's age, health problems, limited earning potential, and modest assets, the court did not abuse its discretion in awarding counsel fees *(see, Tregellas v Tregel-*

*las,* 169 AD2d 553). Concur—Murphy, P. J., Rosenberger, Rubin, Ross and Tom, JJ.