■ MICHELLE S., Appellant, v CHARLES S., Respondent. [683 NYS2d 89] —Order, Supreme Court, New York County (David Saxe, J.), entered September 11, 1996, granting defendant's motion to confirm in part and reject in part the Referee's report to the extent of confirming the Referee's report in all respects, and denying plaintiff's cross-motion for a new hearing on the issues of permanent maintenance and counsel fees, unanimously reversed, on the law and the facts, without costs, the cross-motion granted, and the matter remanded for a hearing on the issues of permanent maintenance and counsel fees. Appeal from order, same court and justice, entered February 19, 1997, denying plaintiff's motion to renew and reargue, unanimously dismissed, without costs, as academic.

Plaintiff wife and defendant husband were married in 1981 and separated in 1991. They have no children. In 1991, plaintiff commenced an action for divorce and defendant counterclaimed.

Pendente lite maintenance of $515 per week was awarded to plaintiff.

Meanwhile, plaintiff was arrested and charged with criminal harassment on two occasions, due to her alleged harassment of defendant and his employer. She was examined by three psychiatrists in 1995 and found unfit to stand trial because of mental illness. In their reports, the psychiatrists all diagnosed plaintiff as exhibiting delusional and paranoid behavior, disorganized thought processes, and impaired judgment. Her mental disorder seemed unlikely to improve, especially since she denied its existence. She was twice confined to a psychiatric facility for several months.

On May 12, 1995, a judgment of divorce was granted in favor of defendant, and the issues of equitable distribution and maintenance were referred to a Special Referee. Plaintiff, who had hired and discharged numerous attorneys during the divorce action, appeared *pro se* at the hearing before the Referee in October 1995. At the time of the hearing, defendant was employed as a superintendent of a cooperative apartment building in Manhattan, with a salary of over $50,000 annually, plus a rent-free, two-bedroom apartment. Plaintiff was 52 years old and had not worked for ten years. She had previously done clerical work for a broker and an insurance company. In addition, while they were married, plaintiff took courses at several colleges and defendant paid the tuition. However, she kept changing her career goals and, so far, had failed to complete the course work to obtain a degree. Plaintiff argued at the hearing that she should be awarded permanent maintenance because her future employment prospects were poor. As she was unwilling to admit to her history of mental illness, plaintiff based her claim of inability to work solely on an allegedly disabling back injury, which the Referee found to be unsubstantiated.

In the portion of the report that is at issue on this appeal, the Referee recommended an award of $515 per week in maintenance for two years from the entry of the divorce decree, namely until May 1997. It was also suggested that defendant pay her tuition to complete her training as a paralegal.

Thereafter, defendant moved to confirm in part and reject in part the Referee's report. Plaintiff had meanwhile retained new counsel, who made a cross-motion for a new hearing on permanent maintenance. Plaintiff's counsel argued that the psychiatrists' reports, which plaintiff had not introduced at the hearing because of her fear of revealing her mental illness, provided strong evidence that she would not become self-

supporting within two years, if ever. The IAS Court denied this motion, holding that despite the psychiatrists' finding of incompetence in January 1995, "plaintiff's history supports the finding that she is capable of remunerative employment".

Plaintiff's counsel later moved to renew and reargue, and submitted two additional psychiatric reports (one of which was by one of the psychiatrists who had examined her in January 1995) based on more recent evaluations of plaintiff in late 1996. These reports confirmed that she was still suffering from delusions and paranoia, and that her mental disorder would probably prevent her from holding a job and becoming self-supporting. This motion was also denied.

We find that the IAS Court should have granted plaintiff's cross-motion for a new hearing to determine whether she was entitled to permanent maintenance. The court should not have relied on the Referee's assessment of plaintiff's history, once it became apparent that plaintiff, who had represented herself at the hearing, was not competent to present an accurate picture of her situation, having been found by three psychiatrists (two of whom were court appointed) to be unfit to stand trial earlier the same year. The Referee was not given the opportunity to consider plaintiff's mental impairment, an essential factor which made it unlikely that plaintiff would become self-supporting, especially in light of her age and lack of recent work experience or marketable skills (*see, Malamut v Malamut*, 133 AD2d 101, 103).

A time limitation on maintenance, such as the IAS Court imposed herein, should be imposed solely to enable the dependent spouse to obtain training to become financially independent, or to allow the dependent spouse to restore his or her earning power to a previous level (*Zelnik v Zelnik*, 169 AD2d 317, 334). When the dependent spouse is unlikely to become completely self-supporting, durational limits on maintenance are inappropriate (*supra*, at 333 [awarding permanent maintenance to wife who would be over 50 in four years and had been homemaker for many years]). Lifetime maintenance may be awarded when the dependent spouse is incapable of future self-support, has no skills or training, or is mentally or physically ill (*Sivigny v Sivigny*, 213 AD2d 243). The appellate courts of this State have often granted permanent maintenance to dependent spouses who, like plaintiff, had psychiatric problems, had been out of the work force for a number of years, lacked advanced degrees, and were middle-aged (*e.g., Sivigny v Sivigny, supra*, at 243-244; *Jones v Jones*, 133 AD2d 217, 218; *Carrozzo v Carrozzo*, 202 AD2d 1070).

Defendant distinguishes this line of cases on the grounds that plaintiff, unlike the dependent spouses in *Zelnik, Sivigny,* and *Jones (supra)*, did not forgo educational and employment opportunities in order to care for the parties' home and children or to assist her husband's career. Rather, he argues, plaintiff has taken several years of college courses at defendant's expense during the marriage and while the divorce action was pending, and has failed to come away with a degree or marketable skills only because of her own lack of direction. He deems the instant case to be more analogous to *Zabin v Zabin* (176 AD2d 262), where the Court denied permanent maintenance to the wife. Although she was schizophrenic and had not worked consistently for over 10 years, she had done some volunteer work and taken courses in several fields. The Court found that she had "the intelligence, capability, and apparently the desire to function in a work environment" (*supra,* at 263). Significantly, the evidence relating to the wife's mental impairment was placed before the fact-finder in *Zabin,* whereas an incomplete picture of plaintiff's capabilities was presented to the Referee on whose factual findings the IAS Court relied in the instant case. Defendant also urges the importance of marital fault in distributing the parties' assets, relying on *Stevens v Stevens* (107 AD2d 987, 988), in which the court reduced the wife's maintenance because she had physically and verbally attacked her husband and harassed him at his place of employment. However, in *Stevens,* permanent maintenance was deemed inappropriate primarily because the wife already had a career and was expected to become self-supporting within a few years.

In light of the foregoing disputes, the best course is to grant the cross-motion and remand for a new hearing so that the Referee may consider plaintiff's psychiatric condition and balance the equities between the parties accordingly. The Referee should also evaluate plaintiff's entitlement to counsel fees (*see, Sivigny v Sivigny, supra,* 213 AD2d, at 245 [awarding counsel fees to plaintiff due to her age, poor mental and physical health, limited earning potential, and modest assets]), an issue which was raised in her cross-motion but not addressed by the IAS Court's order denying the cross-motion. Concur—Sullivan, J. P., Rosenberger, Williams and Mazzarelli, JJ.