OPINION OF THE COURT
 

 Chief Judge Kaye.
 

 At issue in these cases is whether the Division of Housing and Community Renewal (DHCR) has authority to accept late responses from rent-stabilized tenants certifying that their income is below the statutory threshold, and thus that their apartments are not subject to “luxury decontrol” under the Rent Regulation Reform Act of 1993. We hold that DHCR has authority to accept late responses, and therefore we remit
 
 Dworman
 
 and
 
 Sudarsky
 
 to the Division for consideration of the reasons for the tenants’ tardiness in providing the required information. In
 
 Seymour,
 
 however, we uphold DHCR’s order deregulating the apartment, because DHCR did not abuse its discretion in finding that the tenant’s own neglect — the reason tendered for the late filing — did not excuse her default.
 

 
 *366
 
 The luxury-decontrol provisions of the Rent Regulation Reform Act of 1993 (L 1993, ch 253 [the Act]), amending the Rent Stabilization Law of 1969 (Administrative Code of City of NY, tit 26, ch 4), ended rent stabilization for New York City apartments renting for $2,000 or more per month, if the occupants reported a combined annual adjusted gross income in excess of $250,000 for the previous two consecutive years.
 
 [1]
 
 In order to determine which apartments qualify for deregulation, the Act sets out the following procedure:
 

 On or before May 1 of the calendar year, the landlord sends the tenant an “income certification form” (ICF), which the tenant must return to the landlord within 30 days (Rent Stabilization Law [Administrative Code] § 26-504.3 [b]). If the tenant fails to return the form, or if the landlord disputes the income amount reflected on the completed form, the landlord may then, on or before June 30, petition DHCR to verify the tenant’s income
 
 (id.,
 
 § 26-504.3 [c] [1]).
 

 Within 20 days of receiving the landlord’s petition, the Act continues, DHCR sends the tenant a notice of the proceeding, requiring the tenant to provide “such information as the division and the department of taxation and finance shall require to verify whether the total annual income exceeds two hundred fifty thousand dollars in each such year”
 
 (id.,
 
 § 26-504.3 [c] [1]). The notice “shall require the tenant or tenants to provide the information to the division within sixty days of service,” and must include “a warning in bold faced type that failure to respond will result in an order being issued by the division providing that such housing accommodation shall not be subject to the provisions of this law”
 
 (id.).
 
 If the tenant does not provide the required information, DHCR must “issue, on or before December first of such year, an order providing that such housing accommodation shall not be subject to the provisions of this law upon the expiration of the current lease”
 
 (id.,
 
 § 26-504.3 [c] [3]).
 

 Against this statutory background, we turn to the cases before us, none of which met the prescribed timetables for tenant response or agency action.
 

 Dworman v DHCR
 

 In the first case, Leona Dworman and her husband, both retired, have not filed income tax returns since 1993. In March
 
 *367
 
 1995, Dworman’s landlord sent her an IGF, which Dworman timely returned, certifying that her income was below $250,000 for the previous two tax years (1993 and 1994). The landlord filed a petition with DHCR challenging the IGF, and Dworman timely responded to DHCR’s notice, stating that neither she nor her husband had sufficient income to file New York State tax returns for 1993 or 1994. More than a year later, on November 1, 1996, DHCR dismissed the landlord’s petition.
 

 In March 1996, while the 1995 petition was still pending before DHCR, the landlord sent Dworman a second IGF. Once again, Dworman timely responded, stating that neither she nor her husband had sufficient income in the relevant tax years (1994 and 1995) to file an income tax return. In a petition received by DHCR on June 13, 1996, the landlord once again contested Dworman’s certification. On August 13, 1996, DHCR sent Dworman notice of the petition and a request for verification. At that time, however, Dworman and her husband were vacationing in Europe, and they did not return until on or about October 1, 1996. Dworman sent the verification form back to DHCR on October 23, 1996 — 71 days after the notice had been sent — again affirming that she had no taxable income for 1994 or 1995. Dworman alleges that she returned the form immediately after discovering it among three months of accumulated mail, which the doorman had collected for her while she was in Europe.
 

 On November 1, 1996, DHCR entered an order dismissing the landlord’s 1995 petition. The order bore the docket number assigned to the 1995 petition (ZJF-410691-LD), but did not otherwise state that it related to the 1995 petition, rather than the 1996 petition, also pending at that time. One week later, on November 8, 1996, DHCR sent Dworman a letter requesting “proof of timely filing” of her answer to the 1996 petition. Like the November 1 order, however, the November 8 letter did not specify which petition it concerned, although it bore the docket number of the 1996 petition (KF-410275-LD). Confused about which petition the November 8 letter concerned, Dworman on November 11 responded that she did not understand the November 8 letter because the petition had just been dismissed. On January 6, 1997, DHCR sent Dworman a “final request” for additional information, explaining that the November 1, 1996 dismissal order applied to the 1995 petition. Dworman promptly responded that her financial condition had not changed since the previous year and that she and her husband had no income aside from Social Security. On Febru
 
 *368
 
 ary 27, 1997, the Rent Administrator issued an order of deregulation, stating that Dworman “did not answer the owner’s petition or has failed to provide certain information required to verify household income.”
 

 Dworman filed a Petition for Administrative Review (PAR), which DHCR denied on October 23, 1997. The Division ruled that the Act required Dworman to respond to its notice within 60 days, that this limit was
 
 “statutory
 
 in nature” (emphasis in original), and that it was “outside the discretion and purview of DHCR to change this statutory time-limit.” Thus, the Division concluded, because Dworman did not respond to its August 13, 1996 notice until October 23, 1996 — 71 days later — her response was untimely, and the Division was required to issue an order of deregulation.
 

 Dworman then filed the instant CPLR article 78 petition, which Supreme Court dismissed, noting that Dworman had responded to DHCR’s petition “eleven days late.” The Appellate Division reversed, holding that DHCR’s ruling was arbitrary and capricious because Dworman had responded to the notice “a mere 11 days late but months before DHCR’s determination,” Dworman’s income had been “verified as being below the statutory threshold,” and “the landlord and DHCR suffered no prejudice from the brief delay.” The Appellate Division remanded the case to DHCR for a “determination on the merits” (261 AD2d 139, 140). We granted DHCR leave to appeal.
 

 Sudarsky v DHCR
 

 On April 19, 1994, Peter Sudarsky’s landlord sent him an ICF, advising him that he was required to return the completed form within 30 days of service. On June 9, 1994, the landlord filed a petition for deregulation with DHCR, stating that Sudarsky had failed to return the ICF. The Division sent Sudarsky a notice on August 4, 1994, informing him of the petition and stating that he was required to provide income verification information within 60 days. On January 31, 1995, the Rent Administrator issued an order of deregulation, on the grounds that Sudarsky “did not answer” the petition and “failed to provide income verification information.”
 

 Sudarsky filed a PAR on February 21, 1995, alleging that he had sent the income verification information to DHCR “several weeks ago,” and that he and his wife had a combined income of “about $20,000.” The landlord opposed the PAR, arguing that Sudarsky had defaulted by not timely supplying the informa
 
 *369
 
 tion. In response, Sudarsky stated that he had returned the IGF to the landlord with a rent payment in May 1994 and that his initial answer to DHCR’s notice had been mistakenly sent to the landlord — rather than DHCR — in late July 1994. In addition, Sudarsky enclosed tax returns demonstrating that the combined household income was below the statutory threshold and, in fact, that his real estate business had suffered a net loss of over $500,000. DHCR denied the PAR, ruling that Sudarsky had defaulted by failing to file a timely response. The Division rejected both of Sudarsky’s explanations for his default, stating that a response filed “several weeks” before February 21, 1995 would still have been untimely, and that he could not have mistakenly mailed the response to the landlord in “late July,” because the notice was not mailed to him until August 4, 1994.
 

 Sudarsky then filed the instant article 78 petition, alleging that DHCR’s decision was arbitrary and capricious. In addition to the claims raised in his PAR, Sudarsky argued that he had not timely responded to DHCR’s notice because he had been suffering from clinical depression in August 1994, and because his wife, a concert pianist, had been away on tour; he further asserted that DHCR’s procedures violated the Due Process Clauses of the Federal and State Constitutions. Supreme Court granted the petition, holding that DHCR’s decision was arbitrary and capricious because the Division had “failed to address the issue[] of excusable default.” Thus, Supreme Court remanded the case to DHCR to “determine whether [Sudarsky’s] default was justified or excusable, and if so, whether the decision terminating the rent protections should be affirmed or reversed.” Finally, Supreme Court declined to determine that Sudarsky’s due process rights had been violated, calling such a finding “unnecessary and unwarranted.”
 

 The Appellate Division reversed, holding that the requirement that the tenant respond to DHCR’s notice within 60 days is “mandatory and explicit,” and that it “require [s] deregulation of a stabilized apartment where the tenant fails to supply the requisite certification of household income within the 60-day period.” Further, the Appellate Division held that Sudarsky had been provided with “ample notice,” and agreed with DHCR’s finding that Sudarsky had “failed to provide a valid excuse for the failure to timely submit the income certification form to DHCR.” The Appellate Division refused to consider his “belated excuses proffered * * * before Supreme Court” (258 AD2d 405, 407-408).
 

 
 *370
 
 Sudarsky appealed as of right to this Court pursuant to CPLR 5601 (b) (1), arguing that his due process rights had been violated. We dismissed the appeal, because no substantial constitutional question was involved (see,
 
 Matter of Sudarsky v New York State Div. of Hous. & Community Renewal,
 
 93 NY2d 998). We granted leave to Sudarsky on the issue whether DHCR’s decision was arbitrary and capricious.
 

 Seymour v DHCR
 

 In January 1995, Seymour’s landlord sent her an IGF, which she failed to return. On April ’27, 1995, the landlord filed a petition for deregulation, and on August 17, 1995, DHCR sent Seymour notice of the petition. Seymour did not submit income verification information to DHCR, and on December 21, 1995 the Rent Administrator issued a default order of deregulation. On January 24, 1996, Seymour filed a PAR, providing tax returns demonstrating that her household income fell below the statutory threshold. Seymour acknowledged that she had received the notice sent by the Division in August 1994 but had “neglected to mail it.” She asked that the default order be vacated because her default was not willful and because of the “strong policy of this state that matters be decided on their merits.” On July 23, 1997, DHCR denied the PAR, holding that “[ijnadvertent neglect does not excuse the tenant’s failure to file an Answer.”
 
 [2]
 

 Seymour then filed the instant article 78 proceeding, alleging that DHCR’s refusal to vacate its default order was arbitrary and capricious and denied her due process of law. Supreme Court held that DHCR had the discretion to review Seymour’s late submission and vacate the default, and remitted the case to the Division to reconsider its order in light of Seymour’s belated submissions. The Appellate Division affirmed, holding that DHCR’s decision not to reconsider its default order was “arbitrary and capricious given the tenant’s compelling proof of household income well below the * * * statutory threshold” (261 AD2d 176). This Court granted leave.
 

 Analysis
 

 Clearly the Act intends for tenants to provide income verification information to DHCR within 60 days after the Division serves notice of the landlord’s petition to deregulate: the
 
 *371
 
 Act states that the notification “shall require the tenant or tenants to provide the information to the division within sixty days of service” (Rent Stabilization Law [Administrative Code] § 26-504.3 [c] [1]). And clearly the Act gives DHCR authority to issue an order of deregulation if at least 60 days have passed and the tenant has not responded: the Act states that DHCR “shall issue” an order of deregulation “[i]n the event that the tenant or tenants fail to provide the information required pursuant to paragraph one of this subdivision”
 
 {id.,
 
 § 26-504.3 [c] [3]). What remains at issue is whether the Division
 
 must
 
 issue an order of deregulation if the tenant responds after expiration of the 24th hour of the 60th day, or whether the agency has discretion to accept a late filing. For the reasons that follow, we reject the Division’s contention that, under the statute, the hammer necessarily and invariably falls at 12:01 a.m. on the 61st day.
 

 At the outset, we owe little deference to DHCR’s own interpretation of the 60-day provision in this matter of statutory construction. To be sure, where the interpretation of a statute involves specialized “knowledge and understanding of underlying operational practices or entails an evaluation of factual data and inferences to be drawn therefrom,” the courts should defer to the administrative agency’s interpretation unless irrational or unreasonable
 
 (Kurcsics v Merchants Mut. Ins. Co.,
 
 49 NY2d 451, 459;
 
 see also, Matter of Union Indem. Ins. Co.,
 
 92 NY2d 107, 114-115;
 
 Matter of Rosen v Public Empl. Relations Bd.,
 
 72 NY2d 42, 47-48). By contrast, where, as here, the question is one of pure statutory interpretation “dependent only on accurate apprehension of legislative intent, there is little basis to rely on any special competence or expertise of the administrative agency and its interpretive regulations are therefore to be accorded much less weight”
 
 (Kurcsics v Merchants Mut. Ins. Co., supra,
 
 49 NY2d, at 459).
 

 In the instant cases, as well as others decided today
 
 (see, Matter of Elkin v Roldan,
 
 94 NY2d 853;
 
 Matter of Shapiro v New York State Div. of Hous. & Community Renewal,
 
 94 NY2d 853;
 
 Pledge v New York State Div. of Hous. & Community Renewal,
 
 94 NY2d 851), DHCR urges that Administrative Code § 26-504.3 (c) (1) and (c) (3), by their terms, permit no exceptions where a tenant fails to send income verification information to the Division within 60 days of service of the notice. This, however, is not a correct reading of the unambiguous statutory language. While subdivision (c) (1) indeed requires the tenant to return the information “within sixty days of
 
 *372
 
 service,” it does not divest the Division of authority to forgive a late filing or excusable default in the sound exercise of its discretion. Notably, subdivision (c) (3) requires the Division to enter an order of deregulation only if “the tenant or tenants
 
 fail to provide the information”
 
 (emphasis added). Significantly, the statute does not — as DHCR contends — state that such an order must be issued if the tenant does not respond within 60 days. Rather, the implication is that an order must be issued only if the tenant fails to respond at all.
 

 The legislative history additionally supports the interpretation that DHCR has discretion to review a case on the merits despite justifiable tenant tardiness. The Introducer’s Memorandum in Support of the Act states that if the tenant fails to return the ICF to the landlord, the Division of “Taxation and Finance is required by this bill to verify whether the income threshold * * * is exceeded and to advise DHCR of its findings” (Bill Jacket, L 1993, ch 253, Introducer’s Mem in Support, at 3). This indicates that, within the framework set by the statute, the Legislature intended for deregulation proceedings to be decided on the merits.
 

 Further, while DHCR reads the Act to require invariant application of the 60-day rule to tenants, the Division apparently shows little regard for the equally precise deadlines the statute imposes on it. Subdivision (c) (1), for instance, requires DHCR to notify tenants within 20 days after the landlord has filed a petition for deregulation. In the cases at hand, however, DHCR waited nearly four months before notifying Seymour, and two months before notifying either Dworman or Sudarsky. In addition, subdivision (c) (3) requires DHCR to enter a deregulation order by December 1 if the tenant has not responded to the notice. Here, however, the Rent Administrator did not enter the deregulation orders until February 27 in
 
 Dworman,
 
 January 31 in
 
 Sudarsky
 
 and December 21 in
 
 Seymour.
 
 Indeed, DHCR took so long — more than a year — to decide Dworman’s 1995 case that she was confused as to whether the Division’s November 8, 1996 letter applied to her landlord’s 1995, or 1996, petition.
 

 To be sure, DHCR’s delay in sending the notifications did not deprive it of jurisdiction over the proceedings, nor is there any allegation that the delay was so unreasonable as to constitute “extraordinary circumstances” warranting judicial intervention
 
 (see, Matter of Cortlandt Nursing Home v Axelrod,
 
 66 NY2d 169, 180 [judicial intervention for excessive delay in adminis
 
 *373
 
 trative proceeding is warranted only under “extraordinary circumstances”],
 
 cert denied
 
 476 US 1115;
 
 Matter of Geary v Commissioner of Motor Vehicles,
 
 59 NY2d 950, 952 [excessive delay would at most amount to legal error and would not divest agency of jurisdiction];
 
 see also,
 
 State Administrative Procedure Act § 301 [1] [“In an adjudicatory proceeding, all parties shall be afforded an opportunity for hearing within reasonable time”]). However, DHCR’s view of its own deadlines as merely “advisory” weakens its argument that, by mandate of the statute, a tenant’s tardiness in complying with deadlines imposed under the same enactment can never, under any circumstances, be forgiven.
 
 [3]
 

 Nor do
 
 Matter of Mennella v Lopez-Torres
 
 (91 NY2d 474) and
 
 Matter of Brusco v Braun
 
 (84 NY2d 674) support DHCR’s interpretation of the Act. In those cases, we held that RPAPL 732 (3), which requires the court to enter a default judgment in an eviction proceeding for nonpayment of rent if the tenant “fails to answer within five days from the date of service,” must be strictly enforced. Unlike the statute at issue, however, RPAPL 732 (3) explicitly states that a default must be entered if the tenant “fails to answer within five days.” Moreover, we noted in
 
 Mennella
 
 that despite the unequivocal language of the statute, the trial court may nonetheless retain “the power to stay execution of the warrant of eviction for particularized good cause”
 
 (Matter of Mennella v Lopez-Torres, supra,
 
 at 480).
 

 Significantly, the Rent Stabilization Code states that DHCR may, at “any stage of a proceeding * * * for good cause shown, except where prohibited by the RSL, accept for filing any papers, even though not filed within the time required by this Code” (9 NYCRR 2527.5 [d]; see
 
 also,
 
 9 NYCRR 2507.5 [d]; 9 NYCRR 2210.1 [unless it conflicts with the statute, the Rent Stabilization Code applies to all proceedings under the Rent Stabilization Law]). Since Administrative Code § 26-504.3 does not prohibit DHCR from accepting late filings, it may exercise its discretion under the Code to accept late filings when good cause is established.
 

 Further, Code sections 2507.5 (d) and 2527.5 (d) permit DHCR to accept late filings for good cause shown at “any stage of a proceeding” — that is, at any point before the Commis
 
 *374
 
 sioner has entered a final order dismissing the PAR
 
 (see, Matter of Magnone v Halperin,
 
 238 AD2d 207 [“a final decision was not rendered until the resolution of the tenant’s petition for administrative review”];
 
 see also,
 
 9 NYCRR 2529.8
 
 et seq.
 
 [regulations governing “(f)inal determination” by the Commissioner]). Of course, a tenant who waits to supply the required information until an order of deregulation has been entered faces a far heavier burden in establishing good cause for the delay. Nevertheless, where good cause is shown, DHCR has the discretion to permit a late filing either before or after the Rent Administrator has issued a deregulation order, until the Commissioner has taken final action.
 

 We underscore that DHCR may reasonably interpret “good cause” to mean more than “any cause.” By fixing timetables for income verification and deregulation, the Legislature made plain its desire that these proceedings not languish but that they be conducted, and resolved, expeditiously. While ameliorating undue severity, DHCR’s discretion to excuse a default should not be viewed as an invitation to ignore filing deadlines or as a prescription for laxity. DHCR is within its discretion to hold that a tenant who does not demonstrate good cause is simply not entitled to relief
 
 (cf., Matter of Fruci [Commissioner of Labor],
 
 260 AD2d 831, 832 [declining to vacate default where claimant failed to show that Board “abused its discretion in denying claimant’s application to reopen the default decision”]). However, where a tenant does demonstrate good cause for failing to submit the required information within 60 days, DHCR may accept the late filing.
 

 Turning to the cases at hand, we remit
 
 Dworman
 
 and
 
 Sudarsky
 
 to DHCR so that the agency may evaluate them under the good cause standard. Dworman alleges what might, or might not, amount to good cause: she claims that her response was 11 days late because she was in Europe for three months and did not see the notice until after the deadline had expired. In denying Dworman’s PAR, DHCR held that the 60-day time limit was
 
 “statutory”
 
 in nature and that it was “outside the discretion and purview of DHCR” to alter it. Although the Commissioner commented in passing that Dworman had not provided a “sufficient explanation for the late filing,” the analysis is otherwise devoted — in its entirety — to asserting that the 60-day limit is inflexible and insurmountable. Significantly, in its several communications with Dworman, DHCR never asked her to provide an “explanation” for her late filing; rather, it asked only for proof that her response
 
 *375
 
 had in fact been timely filed. Under these circumstances, it is appropriate to remit the case to DHCR for reconsideration under the proper standard. Further, on remittal, DHCR may consider, in its discretion, whether the 11-day delay was so minimal as to be excusable under the maxim of
 
 de minimis non curat lex (cf., Van Clief v Van Vechten,
 
 130 NY 571, 579;
 
 Flora Co. v Ingilis,
 
 233 AD2d 418, 419).
 

 Similarly, Sudarsky alleged what might possibly be good cause: he claimed that he mistakenly sent the information to the landlord rather than to DHCR. Contrary to DHCR’s holding, the fact that he recalled having sent the information in late July 1994 (rather than early August when the notice was mailed) did not necessarily defeat his claim — his recollection of the dates might simply have been off by a few days. Thus, we remit
 
 Sudarsky
 
 as well to DHCR for reconsideration.
 

 In
 
 Seymour,
 
 however, the Appellate Division erred in remitting the matter to DHCR; the order deregulating Seymour’s apartment should not be disturbed. In denying Seymour’s PAR, DHCR did not apply the wrong standard: it did not assert that it could never forgive violations of the 60-day deadline. Rather, the Division found that Seymour’s “[i]nadvertent neglect”— concededly the cause of her delay — did not excuse her default. DHCR was within its discretion to conclude that, absent any allegation of good cause, the policy of deciding cases on their merits does not override the statutory mandate that information be provided expeditiously. Nor can Seymour’s five-month delay fairly be characterized as de minimis. Thus, we cannot say that the Division abused its discretion in denying Seymour’s PAR.
 

 The parties’ remaining contentions are without merit.
 

 Accordingly, the Appellate Division’s order in
 
 Dworman
 
 should be modified, without costs, and the matter remitted to Supreme Court with instructions to remand to DHCR for further proceedings in accordance with this opinion, and, as so modified, affirmed; the Appellate Division’s order in
 
 Sudarsky
 
 should be reversed, with costs, and the matter remitted to Supreme Court with instructions to remand to DHCR for further proceedings in accordance with this opinion; and the Appellate Division’s order in
 
 Seymour
 
 should be reversed, with costs, and the petition dismissed.
 

 Judges Bellacosa, Smith, Levine, Ciparick, Wesley and Rosenblatt concur.
 

 In
 
 Matter of Dworman v New York State Div. of Hous. & Community Renewal:
 
 Order modified, etc.
 

 
 *376
 
 In
 
 Matter of Seymour v New York State Div. of Hous. & Community Renewal:
 
 Order reversed, etc.
 

 In
 
 Matter of Sudarsky v New York State Div. of Hous. & Community Renewal:
 
 Order reversed, etc.
 

 [1]
 

 . In 1997, the law was amended to lower the income threshold to $175,000. The instant cases arose before the effective date of that amendment.
 

 [2]
 

 . Also, on April 17, 1996, Seymour filed a “Request for Reconsideration” of the deregulation order, which DHCR denied on May 14, 1996.
 

 [3]
 

 . DHCR acknowledges that a late response would be accepted if, for instance, a tenant was incapacitated and thus unable to respond within 60 days. Thus, in essence, DHCR admits that the absolutist position it has taken in these cases is not mandated by the statute.