■ In the Matter of IG SECOND GENERATION PARTNERS L.P. et al., Respondents, v NEW YORK STATE DIVISION OF HOUSING AND COMMUNITY RENEWAL, Respondent, and IRENE B. SMITH, Appellant. [743 NYS2d 424] —Order and judgment (one paper), Supreme Court, New York County (Walter Tolub, J.), entered February 5, 2001, which granted the petition brought pursuant to CPLR article 78 to annul the determination of respondent New York State Division of Housing and Community Renewal (DHCR), dated April 16, 1999, denying petitioner-landlord's petition for administrative review and affirming the order of the Rent Administrator dated December 23, 1994, determining respondent-tenant's fair market rent appeal, to the extent of remanding the matter to respondent DHCR to consider whether petitioner's delay in submitting documentation was de minimis, unanimously reversed, on the law, without costs, the petition denied and the proceeding dismissed.

In November 1990, petitioner-landlord (landlord) entered into a residential lease with respondent-tenant (tenant), the first rent-stabilized tenant of the subject apartment, for a monthly rent of $1,200. After discovering that the subject apartment had previously been rent-controlled, with a monthly rent of $354.32, tenant commenced a fair market rent appeal with the New York State Division of Housing and Community Renewal on January 20, 1991. However, DHCR did not give notice of tenant's complaint to landlord until May 8, 1992. Included in the May 1992 notice was a statement that landlord was required to provide "substantiating proof" for all rent increases, and that landlord's response was required within 20 days or it would be considered in default. Landlord did not respond to this notice.

On June 23, 1994, DHCR sent landlord a fair market rent

appeal package, which contained detailed instructions on how the initial rent for tenant's apartment was to be calculated and the type of documentation that would be required to justify any rent increases for new equipment or improvements. The package included a notice that proof of improvements "must be submitted in detail and supported by paid receipts and checks" within 20 days. On July 11, 1994, two days before the 20-day period expired, landlord's counsel wrote to DHCR requesting an additional 30 days to respond. By letter dated July 25, 1994, DHCR granted landlord's request, indicating that a response would be appreciated by August 18, 1994.

When landlord failed to respond by this date, DHCR sent the parties a summary notice, dated August 26, 1994, notifying them of the method by which tenant's rent would be calculated in the absence of proof of improvements from landlord. The notice further stated that it was not a "final determination," and gave the parties the right to submit "any comments" within 21 days. When landlord did not respond, DHCR sent it an additional notice on October 13, 1994, which included a handwritten demand for bills and canceled checks justifying improvements, and a 12-day deadline. On October 27, 1994, two days after the 12-day deadline had expired, landlord's counsel wrote to DHCR requesting an extension of time until November 27, 1994 since "the documentation will take some time to obtain from archives."

On November 4, 1994, DHCR, which apparently had not yet received landlord's counsel's October 27, 1994 letter, sent an amended summary notice reiterating how the fair market rent would be calculated in light of landlord's default in submitting proof of improvements. This second summary notice requested that any comments be made within 21 days, or by November 25, 1994. Landlord did not respond by that date, or by November 27, 1994, the date requested by its counsel. Instead, by letter dated November 29, 1994, landlord's counsel informed DHCR that he had been in a car accident on November 21, 1994, and therefore needed a further extension until December 19, 1994 to respond to DHCR's October 13th request.

On December 23, 1994, DHCR issued a Rent Administrator's order setting the fair market rent for tenant's apartment at $489.10 per month, noting that landlord had "failed to provide copies of bills and canceled checks to substantiate the cost of several alleged apartment improvements."

Landlord, in a mailing postmarked December 23, 1994 and received by DHCR on December 27, 1994, submitted invoices and canceled checks purporting to establish over $18,000 in expenses renovating the apartment.

Landlord filed a petition for administrative review (PAR), in which its counsel alleged, inter alia, that he had misdiaried the "due date" as December 23, 1994, instead of December 19, 1994, and that DHCR should have considered landlord's proof mailed only a few days late, especially in light of the usual post office delays during the holiday season and· DHCR's own delays in this case. He further argued that DHCR should decide tenant's fair market rent appeal on the merits.

More than five years later, by written order dated April 16, 1999, DHCR denied landlord's PAR on the ground that landlord had been afforded adequate time to submit documentation of improvements but had failed to do so. It further found that landlord's late submission, beyond the latest extension date requested by its counsel, was not excused by alleged difficulties in locating documents that were always in landlord's possession. DHCR also declined to consider an appraisal report on the fair market rent for the subject apartment, submitted by landlord for the first time on administrative appeal.

Landlord commenced the instant article 78 proceeding seeking to annul DHCR's determination that it had defaulted and for a remand to DHCR for a determination on the merits. DHCR moved to dismiss the petition and, after the IAS court sua sponte made tenant a party to the proceeding, tenant also moved for dismissal. In the order appealed from, the IAS court granted the petition to the extent of remanding the matter to DHCR to determine whether landlord's untimely submission of documentation eight days after its requested December 19, 1994 extension date was de minimis. In reaching this conclusion, the court noted that DHCR has discretion to excuse late filings and that DHCR itself had delayed resolution of the matter by not forwarding tenant's complaint for over a year, and by not providing a fair market rent appeal package for two additional years.

On appeal, tenant argues that the IAS court erred in substituting its judgment for that of DHCR in remanding for a determination as to whether landlord's repeated defaults in submitting documentation were de minimis. We agree with tenant that DHCR properly exercised its discretion in holding that landlord's multiple defaults were inexcusable, and therefore reverse the judgment and deny the petition.

In *Matter of Dworman v New York State Div. of Hous. & Community Renewal* (94 NY2d 359, 373-374) and *Matter of Elkin v Roldan* (94 NY2d 853, 857), the Court of Appeals held that DHCR is authorized under the Rent Stabilization Code to exercise its discretion and accept late filings when good cause

is established. (*See*, 9 NYCRR 2527.5 [d].) However, it also cautioned that "DHCR may reasonably interpret 'good cause' to mean more than 'any cause' * * * [and] DHCR is within its discretion to hold that a [party] who does not demonstrate good cause is simply not entitled to relief [citation omitted]." (*Dworman, supra* at 374.)

Landlord's argument that DHCR failed to consider its default under the appropriate legal standard is refuted by the record. In his decision denying landlord's PAR, the Deputy Commissioner carefully laid out the chronology of events, including the numerous deadlines missed by landlord, concluded that landlord "was afforded an adequate opportunity" to submit documents but failed to do so, and, further, explicitly rejected the excuse offered by landlord concerning the difficulty in locating documents.* Significantly, nowhere in his decision does the Deputy Commissioner suggest that DHCR was legally prohibited from accepting late filings. Thus, contrary to the landlord's arguments, and unlike *Elkin*, DHCR did not summarily bar a late filing in this case by applying an inflexible statutory or administrative deadline, but rather exercised its discretion after considering the facts and circumstances of the case (*see, Matter of Seymour v New York State Div. of Hous. & Community Renewal*, 94 NY2d 359, 375 [Appellate Division erred in remanding to DHCR since agency did not apply incorrect standard; DHCR did not assert that the 60-day deadline could never be forgiven, it merely found that the tenant's admitted · "[i]nadvertent neglect" did not excuse her default]).

Landlord's argument that its mere "eight day delay" was "unintentional, of short duration and non-prejudicial," and therefore should be excused, is based on a misreading of the record. Landlord contends that its delay could be seen as de minimis since the required documentation was filed only eight days beyond the December 19, 1994 "due date." Surprisingly, given the record before it, the IAS court adopted landlord's view that the submissions were only eight days late. However, the record plainly shows that DHCR had made six separate requests for documentation over a period of two years and six months, and landlord failed to comply with a single one.

Contrary to the IAS court's holding, December 19, 1994 was not the latest in a series of due dates for landlord's submis-

* Landlord's further assertion that DHCR did not consider its counsel's law office failure is also contradicted by the record. In his decision denying the PAR, the Deputy Commissioner noted that the landlord had argued that its "former counsel inadvertently misdiaried the due date as December 23, 1994."

sions—rather, it was the most recent extension date requested by landlord, after five previous defaults. The record demonstrates that DHCR never granted an extension to December 19th, which, in any event, passed without any filing by landlord. Thus, as tenant argues, the premise that an eight-day delay could be considered de minimis is factually flawed in that it ignores the entire history of the proceedings before the Rent Administrator. Indeed, as tenant notes, the IAS court's holding would essentially compel DHCR to ignore the repeated prior defaults and require it to consider landlord's delay as encompassing only eight days, a result we find inconsistent with the same good cause standard espoused by landlord on this appeal.

Having viewed the entirety of the record, we find that DHCR's determination that landlord's repeated defaults were inexcusable had a rational basis and we will not disturb it (*see, Matter of E.G.A. Assoc. v New York State Div. of Hous. & Community Renewal*, 232 AD2d 302). Landlord ignored DHCR's initial mailing and request for documentation for over two years. Thereafter, landlord was given at least four additional deadlines, yet failed to meet any of them. Finally, when landlord's counsel requested another extension to December 19, 1994, which DHCR did not approve, the agency still refrained from finding landlord in default until that date had passed without any communication from landlord or its counsel. At this juncture, in the absence of any information that would justify a finding of good cause, DHCR was certainly within its discretion to find that it was not obligated to afford the owner any additional time to submit the required documentation. (*See, Matter of 985 Fifth Ave. v State Div. of Hous. & Community Renewal*, 171 AD2d 572, 575, *lv denied* 78 NY2d 861 [petition should have been dismissed in rent overcharge proceeding where landlord was accorded ample opportunity to supply documentation concerning appliances and equipment and failed to do so]).

In light of landlord's clearly dilatory conduct, we are not persuaded that DHCR's own considerable delay, and the importance of determining the correct rent, compel a different outcome. Concur—Andrias, J.P., Sullivan, Wallach, Rubin and Gonzalez, JJ.