Matter of Bandil Farms Inc. v New York State Div. of Hous. & Community Renewal (2021 NY Slip Op 00002)





Matter of Bandil Farms Inc. v New York State Div. of Hous. & Community Renewal


2021 NY Slip Op 00002


Decided on January 05, 2021


Appellate Division, First Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: January 05, 2021

Before: Acosta, P.J., Gische, Oing, González, Kennedy, JJ. 


Index No. 260322/19 Appeal No. 12569 Case No. 2019-05408 

[*1]In the Matter of Bandil Farms Inc., Petitioner-Appellant,
v
New York State Division of Housing and Community Renewal, Respondent-Respondent.


Law Office of Jeffrey F. Cohen, Bronx (Jeffrey F. Cohen of counsel), for appellant.
Mark F. Palomino, New York (Sandra A. Joseph of counsel), for respondent.



Judgment, Supreme Court, Bronx County (Donna Mills, J.), entered on or about September 23, 2019, denying the petition to annul the determination of respondent New York State Division of Housing and Community Renewal (DHCR), dated March 4, 2019, which denied a challenge to the grant of a rent overcharge, imposed treble damages, and reduced the legal regulated rent, and dismissing the proceeding brought pursuant to CPLR article 78, unanimously affirmed, without costs.
DHCR's determination of a rent overcharge based upon the inclusion of an "on-time" provision in the tenant's rent stabilized lease was rationally based and was not arbitrary and capricious (see Matter of 333 E. 49th Partnership, LP v New York State Div. of Hous. & Community Renewal, 165 AD3d 93, 101 [1st Dept 2018], lv denied 33 NY3d 908 [2019]). The Rent Administrator (RA) properly set the legal regulated rent for the apartment at the reduced rent the owner had set on the base date and imposed treble damages. The agency determination was based on its finding that the higher rent that the tenant would have to pay if he did not pay on time did not make the lower rent a "preferential rent" under the rent stabilization laws; it was an unconscionable late fee of 147%. Moreover, Fact Sheet #40, on which the determination was based, is not a stand-alone rule or regulation, but rather the agency's permissible interpretation of the rent stabilization law and code provisions applicable to the parties' dispute.
In June 2016, nonparty Nathan Morey, the tenant of apartment 1F in petitioner's building, filed an overcharge complaint with DHCR complaining about rent overcharges for the period July 18, 2013 through March 11, 2016, including "Illegal Fees
and/or Surcharges." Morey submitted the 2015 Annual Apartment Registration showing that the legal regulated rent for the apartment was $2,447.17, but there was an "early payment discount" that resulted in rent paid by the him at the reduced rate of $1,025 per month. In response, petitioner filed copies of its rider to each renewal lease with Morey. In relevant part, each rider contained this provision: "the owner will temporarily accept a reduced amount . . . per month provided that the tenant's payment is received in the landlord's office and deposited prior to the 5th day of the month . . . said concession is neither intended as a permanent rent reduction, nor is it intended as a preference to govern throughout Tenant's tenancy."
The RA determined that the lower rent the owner charged was a conditional temporary concession of reduced rent on the base date. The RA also determined that where a clause in a rent-stabilized lease allows an owner to end a preferential or discounted rent if the tenant fails to pay the lower rent by a certain day of the month, such clause is unenforceable. The RA issued an order on January 11, 2018 finding a rent overcharge of $4,265.68, imposed $7,618.16 in treble damages plus $190.06 in interest and $144.96 in excess security amount for a total overcharge in the amount of $12,219.86. The base date used was June 21, 2012 and the legal rent was established at $1,005.04 for the one-year lease commencing November 1, 2017.
The owner argues that DHCR exceeded its authority because the agency lowered or reset the legal regulated rent (LRR) of the apartment to the preferential/ temporary rent concession rent it offered the tenant in the rider. The owner argues that not only did it never charge Morey more than the discounted rent, DHCR's decision to lower the LRR either in the manner or for the reasons it did is arbitrary, capricious and an ultra vires act without basis in the rent stabilization law or code. The owner contends that DHCR's reliance on Fact Sheet # 40 circumvents the necessary and appropriate administrative rulemaking procedures of New York State Administrative Procedure Act (SAPA) and, therefore, DHCR's determination is based upon an illegal rule.
It is unrefuted that this apartment is governed by the Rent Stabilization Law (RSL) of 1969 (Administrative Code of City of NY § 26—501, et seq.) and the Rent Stabilization Code (RSC) ([9 NYCRR] § 2520.1, et seq.). While the rent stabilization statutory framework sets a ceiling for how much rent an owner can charge, an owner is not required to collect the full legal rent and may charge and collect a lower rent, generally identified as a "preferential rent" (see RSL 26-511[c](14); RSC 2521.2). RSL § 26—511(c)(14) further provides that where a tenant is charged and pays a preferential rent, upon renewal of the lease or vacancy of the apartment the owner may, at its sole option, charge the previously established LRR, as adjusted by the most recent applicable guidelines increases, and any other increases authorized by law. This provision does not permit an owner to raise a preferential rent during the term of an existing lease. Further, nothing in the RSL or RSC allows an owner to charge any rent in excess of the LRR (RSL 26-512[a]; RSC 2525.1). As a result, "lease clauses deeming legal and late fees additional rent have been held to be unenforceable against rent-stabilized tenants [FN1]" (Related Tiffany v Faust, 191 Misc 2d 528, 529-30 [App Term, 2d Dept 2002][internal citations omitted]).
The lease rider in this case does not describe the lower rent as a preferential rent (RSL 26-511[c][14]; RSC 2521.2), but rather describes it as a temporary reduction "provided that the tenant's payment is received in the landlord's office and deposited prior to the 5th day of the month" The obvious intention of the language is to incentivize the tenant to pay on time, making it an on-time payment discount. This is not a preferential rent as that term is defined in the RSL and RSC. The rider, which expressly states that it is "not intended as a preference to govern throughout Tenant's tenancy," supports this conclusion. Were it a preferential rent, it could only be adjusted when the tenant renewed the lease, or when the apartment becomes vacant and there is a vacancy lease (RSL 26-511[c][14]). DHCR appropriately set the rent at the discounted amount because each rider during the relevant period set the rent at that amount. The rent was never increased to the LRR when the lease was renewed.
DHCR Fact Sheet #40 is not in contravention of SAPA's rule making authority. It summarizes and interprets those provisions of the RSC and RSL pertaining to preferential and legal rents. It establishes guidelines that owners and tenants alike can use in evaluating their respective rights and obligations. For instance, Fact Sheet #40 instructs that the owner's collection of higher rents based on an "on-time" payment clause in a lease can "be challenged by the tenant in a rent overcharge complaint with DHCR or can be reviewed by a court of competent jurisdiction." "[W]here the interpretation of a statute involves specialized knowledge and understanding of underlying operational practices or entails an evaluation of factual data and inferences to be drawn therefrom, the courts should defer to the administrative agency's interpretation unless irrational or unreasonable" (Matter of Dworman v New York State Div. of Hous. and Community Renewal, 94 NY2d 359, 371 [1999] [internal quotation marks omitted]). In this case we defer to the agency's interpretation of its provisions regarding preferential rents and late fees.
Assembling both prongs of what resulted from the owner's inclusion of this clause in the rider to each lease: 1) it was possible for the owner during the existing lease term to charge and demand payment in the higher (LRR) amount, not the lower amount, if the tenant did not remit payment by the 5th day of any month during that term; and 2) this increase in rent was a penalty for the tenant not paying on time, or conversely, an incentive for him to pay on time and avoid such penalty. Given those circumstances, and upon application of RSL §26-511(c)(14), RSC §2521.2 it was within DHCR's authority to set the discounted rate as the LRR on the base date (see Matter of Rania Mesiskli, LLC v New York State Div. of Hous. & Community Renewal, 166 AD3d 625 [2d Dept 2018]).
The imposition of treble damages was proper, as owner failed to satisfy its burden of showing that the overcharge was not willful (see Matter of 125 St. James Place LLC v New York State Div. of Hous. & Community Renewal, 158 AD3d 417 [1st Dept 2018]).
We have considered petitioner's remaining contentions and find them unavailing.
THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: January 5, 2021



Footnotes

Footnote 1: The recently enacted Housing Stability and Tenant Protection Act of 2019 (HSTPA) (L 2019, ch 36, part M), added a new section Real Property Law § 238-a [2]. This new provision limits late fees to an amount of "fifty dollars or five percent of the monthly rent, whichever is less" This statute does not apply here as this action was commenced before the effective date of the statute, June 14, 2019. Furthermore, Real Property and Procedure Law 702 provides that "[n]o fees, charges or penalties other than rent may be sought in a summary proceeding pursuant to this article, notwithstanding any language to the contrary in any lease or rental agreement." This latter section was effective the same date.