Fuchsberg, J.
We hold that New York State’s recently enacted uniform mail registration statute (Election Law, § 153) is valid.
Plaintiff, a registered voter in Erie County, challenges the validity of the statute under section 5 of article II of our State Constitution. The Supreme Court, Erie County, found the statute to be in contravention of that section. Pursuant to CPLR 5601 (subd [b], par 2), the case is now here on direct *163 appeal from the order and judgment of that court. For the reasons which follow, we reverse its determination.
Section 153 of the Election Law (L 1975, ch 166) reads in pertinent part:
"Registration and enrollment and transfer of same upon application filed by mail
"1. In addition to central registration as provided in section three hundred fifty-five of this chapter, any qualified person may apply for registration and enrollment or to transfer his registration and enrollment by mail.”[1]
By the enactment of the statute, the Legislature attempted to deal with New York’s voting deficiencies, including the fact that not more than half of those eligible to vote have actually been exercising their franchise.[2] Indeed, in three counties, voter participation has slipped to such a degree that the State is now subject to the preclearance provisions of the Voting Rights Act of 1965 (US Code, tit 42, § 1973b, as re-enacted Aug. 6, 1975), which applies whenever voter turnout is substandard within its terms (see, also, New York v United States, 419 US 888; United Jewish Organizations of Williams-burgh v Wilson, 510 F2d 512, cert granted 423 US 1025). The Legislature, therefore, attempted to encourage voting by adding a simple, State-wide form of mail registration to the personal registration procedures already available (cf. Election Law, § 355).
Petitioner challenges this statute as violative of section 5 of article II of our Constitution. However, it is section 6 of article II, and not section 5, by which section 153 must be tested.
Section 5 of article II was adopted in virtually its present form in 1894.[3] It is directed toward the establishment of a system of annual voter registration, under which each voter may be required to register anew prior to each year’s general election. As a precaution against fraud, it requires all voters living in cities and villages with populations over 5,000 to *164 register "upon personal application only”, while it exempts voters living in smaller, more rural areas from the requirement of registering "in person”. Moreover, it mandates that laws be established for "the registration of voters; which registration shall be completed at least ten days before each election” (emphasis added). (See Problems Relating to Home Rule and Local Government: Documents Prepared for Delegates to the Constitutional Convention of 1938, vol XI, pp 195-200.)
Section 6 of article II, on the other hand, provides for a system of permanent voter registration. Adopted at the Constitutional Convention of 1938, it states:
"§ 6. [Permanent registration]
"The legislature may provide by law for a system or systems of registration whereby upon personal application a voter may be registered and his registration continued so long as he shall remain qualified to vote from the same address, or for such shorter period as the legislature may prescribe.”
Unlike section 5, section 6 was intended by its drafters to be "experimental” and "entirely permissive” (Revised Record, New York State Constitutional Convention of 1938, vol III, pp 2404, 2405). The chairwoman of the Convention’s Committee on Suffrage, which drafted section 6, and its other proponents successfully defeated attempts to put into section 6 a constitutionally mandatory provision requiring State-wide registration. (At pp 2410-2411.) They succeeded in securing the adoption of their preference that the Legislature, not the convention, be empowered to make that decision. (At pp 2397, 2411.) The debates, moreover, are replete with citations to statistics which showed, even in 1938, that registration on an annual basis tended to depress voter participation and show concern as to how voter participation might best be encouraged. (At pp 2396-2414.)
Indeed, in contrast to what the delegates considered the rigid and restrictive approach embodied in the specific provisions of section 5, the entire tenor of their discussion of section 6 indicates a desire to also leave to the Legislature’s later judgment the choice of means by which it might seek to effectuate the expansive purposes of permanent registration. Thus, since section 6 was designed to be permissive in its grant of authority to the Legislature, section 5 was not repealed, but remained operative until rendered dormant by legislative implementation of section 6.
*165 In fact, the Legislature moved slowly with respect to the powers granted it in section 6. It was not until 1954 that it enacted section 350 of the Election Law, by which it put into effect a system of local option for permanent personal registration. Then, in 1965, it amended section 350 (L 1965, ch 319) to provide a mandatory, State-wide system of permanent registration, under which both urban and rural voters were required to register in person initially and were then permitted to maintain that registration without further effort, so long as they did not change addresses or fail to vote in two successive general elections. In due course, it also repealed the statutory provisions which had governed the annual registration procedures covered by section 5 (Election Law, §§ 156-157-a). The result is that a uniform, permanent personal registration system, in substitution for annual registration, has been in effect throughout the State for nearly 10 years.
In consequence of that exercise by the Legislature of its authority under section 6 of article II of the Constitution to mandate "a system or systems” of permanent registration, section 6 then became fully operative, section 5 became inoperative and the differentiation of treatment between larger and smaller communities disappeared. Thereafter, the requirement for in-person registration under section 350 remained in effect until the Legislature, in the further exercise of its apparent authority under section 6, enacted present section 153 (L 1975, ch 166). By that chapter, mail registration replaced in-person registration.
As with section 350 of the Election Law, section 153 of the Election Law has, by its terms, been made applicable throughout the State. In conformity with the scope of section 6, neither of those statutes set up any geographical distinctions. Accordingly, all voters are accorded equal treatment. And, since all citizens are treated in precisely the same manner, there is no substance to the contention that there has been a denial of equal protection under constitutional limitations.
It now remains only to consider whether that mail registration system is interdicted by the words "personal application” in section 6. We conclude that it is not.
Absent other and countervailing indicia of intent, the words "personal application” in a statute or constitutional provision need not be taken to mean "by physical appearance”. A broader and at least equally tenable interpretation of "personal application” is that the voter must himself perform the *166 steps necessary to complete and effect the application. Unlike section 5, where the words "personal application” appear in juxtaposition to the far more compelling phrases "apply in person” and "appear personally” and thus permit no other interpretation than personal, physical presence (cf. Matter of Fraser v Brown, 203 NY 136, 141), the words "personal application” stand alone in section 6.
In sum, whatever, "personal application” may have meant in section 5, and notwithstanding the fact that sections 5 and 6 were considered together at the Constitutional Convention of 1938, we are not constrained to ascribe to the use of "personal application” in section 6 the inescapable interpretation that applies to section 5. The very language in which the advantages of the then proposed new section 6 of article II were listed at the 1938 Convention included "(2) Avoidance of loss of vote by a voter unable to register in person, and convenience in saving voters an additional trip to the polls” (Revised Record, New York State Constitutional Convention of 1938, vol III, p 2397). Interestingly, the Legislature, in the enactment of section 153 of the Election Law in order to encourage voting by facilitating registration, sought to achieve that very purpose.
The provisions of section 153 of the Election Law require a voter to complete an application and sign it personally, giving information about himself as an individual before mailing it to the appropriate registration office. That is a "personal application”. Section 153 of the Election Law, therefore, is a valid exercise of the authority conferred upon the Legislature by section 6 of article II of the New York State Constitution.
Accordingly, the judgment of the Supreme Court should be reversed and a judgment should be entered below containing a declaration in accordance with the views expressed herein and denying petitioner’s prayers for relief.
Chief Judge Breitel and Judges Jasen, Gabrielli, Jones, Wachtler and Cooke concur.
Judgment reversed, without costs, and matter remitted to Supreme Court, Erie County, for the entry of judgment in accordance with the opinion herein.

. The statute goes on to detail procedures governing its administration, including guidelines intended to guard against its abuse.

. (See Kelley, Ayres and Bowen, Registration and Voting; Putting First Things First, 6 American Pol Sci Rev 359.) Data culled from public records is, of course, a proper subject of judicial notice (Trustees of Union Coll, v City of New York, 65 App Div 553, affd 173 NY 38; Richardson, Evidence [10th ed], § 50, p 29).

. Portions of section 5 of article II which were adopted after 1894, also list specific categories, not relevant here, of absentee voters who are granted exemptions from the requirement for personal registration.