OPINION OF THE COURT
Lucy Billings, J.
This action seeks to recover $38,202.41 in unpaid premiums for workers’ compensation insurance issued by the State Insurance Fund to defendants; $8,404.53 in collection costs (State Finance Law § 18 [5]); and interest from August 31, 1996 (State Finance Law § 18 [3], [4]). Defendant Pet Lift Ltd. moves for summary judgment dismissing the complaint against Pet Lift. (CPLR 3212 [b].) For the reasons explained below, the court denies Pet Lift’s motion.
I. Background
Upon the application of defendant Brooklyn Barber Beauty Equipment Co., Inc., in 1963, plaintiff Commissioners of the State Insurance Fund (SIF), a state agency, issued this defendant a workers’ compensation insurance policy, which was renewed annually. On January 2, 1995, defendants Brooklyn Barber and Pet Lift Ltd. requested that Pet Lift be added as an insured to the policy. Defendants jointly and severally assumed full liability for all premiums for coverage extended to either or both.
SIF commenced an action initially against only Brooklyn Barber for unpaid premiums due during the period the joint policy was in effect. SIF commenced a second action against Pet Lift for the same unpaid premiums, which the court consolidated with the action against Brooklyn Barber.
State Finance Law § 18 (10) applies to SIF in collecting debts owed to the agency, as in this action. That law provides:
*4 “Every state agency to which this section is applicable is authorized to enter into written agreements with any debtor under which such debtor is allowed to satisfy liability for payment of any debt * * * in installment payments if the state agency determines that such agreement will facilitate collection of such liability. Provided further, that where such state agency determines that immediate collection of the debt would jeopardize the debtor’s fiscal viability and thereby impose a hardship to the public, such agency shall offer to enter into a written agreement to temporarily defer collection of the debt, collect the debt on an installment basis, or make other reasonable arrangements to reduce such hardship on the public of collecting the debt.” (State Finance Law § 18 [10].)
Pet Lift contends this provision required SIF to determine whether immediate collection of defendants’ debt would jeopardize their fiscal viability and impose a hardship on the public before SIF commenced an action to recover the debt. Consequently, if SIF did not make that determination, that failure constitutes a failure to satisfy a condition precedent that bars this action, requiring its dismissal.
II. Interpretation of State Finance Law § 18 (10)
Statutory interpretation begins with the statute’s literal language, which if unambiguous, limits the court’s interpretation to giving that language “its natural and most obvious sense.” (McKinney’s Cons Laws of NY, Book 1, Statutes § 94; People v Bolson, 185 Misc 2d 753, 754 [Sup Ct, Queens County 2000]; see Matter of Drew v Schenectady County, 88 NY2d 242, 246 [1996]; Ball v Allstate Ins. Co., 81 NY2d 22, 25 [1993]; Matter of Washington Post Co. v New York State Ins. Dept., 61 NY2d 557, 565 [1984]; see also Statutes § 76; Matter of King v Cuomo, 81 NY2d 247, 253 [1993].) If the statute contains various parts, the court must presume the Legislature “intended that each part have a distinct meaning.” (Staruch v New York Tel. Co., 277 AD2d 830, 832 [3d Dept 2000].) The court also must strive to harmonize the whole, giving “every part and word” of the statute a meaning and effect (Statutes § 98 [a]; Hartnett v New York City Tr. Auth., 200 AD2d 20, 25 [2d Dept 1994]), consistent with the statute’s overall intent. (Statutes §92.)
State Finance Law § 18 (10) provides for installment plans to pay a debt in either of two circumstances, where the agency *5 determines (1) that the plan will “facilitate collection” or (2) that immediate collection will “jeopardize the debtor’s fiscal viability and thereby pose a hardship to the public.” In the latter situation, in addition to an installment plan, the agency may agree to defer payment or make any other “reasonable” arrangement to reduce public hardship.
The two conditions differ in another important respect. In the second situation, if the agency determines that immediate debt collection would create a public hardship by jeopardizing the debtor’s fiscal viability, the “agency shall offer to enter into a written agreement” to avoid the hardship (State Finance Law § 18 [10] [emphasis added].) Without evidence of a contrary legislative intent, “words of command in a statute are construed as peremptory.” (Statutes § 177 [a]; see People v Shonfeld, 74 NY2d 324, 328-329 [1989]; Matter of Janus Petroleum v New York State Tax Appeals Trib., 180 AD2d 53, 54 [3d Dept 1992]; see also Statutes § 177 [c]; Matter of Albert F. v Stone, 169 Misc 2d 838, 844 [Sup Ct, Suffolk County 1996].) “Shall” ordinarily is understood as a word of command, imposing a mandate to act when the predicate conditions are satisfied. (Matter of Brusco v Braun, 84 NY2d 674, 680 [1994]; Centennial Restorations Co. v Wyatt, 248 AD2d 193, 195 [1st Dept 1998].) Thus, when the agency determines that immediate collection would cause public hardship, the agency must offer an installment plan, a deferred payment plan, or another reasonable remedy diminishing the collection’s financial impact on the debtor to the extent necessary to avoid public hardship.
While State Finance Law § 18 (10) as a whole evinces a strong legislative preference for ameliorative debt collection practices, the mandatory language, found only in the public hardship provision, requires these practices only where the public welfare is concerned. Absent public hardship, the agency may decline to offer an installment plan, even if it would facilitate efficient and effective debt collection and immediate collection jeopardizes a debtor’s fiscal viability. The duty to offer an ameliorative alternative in cases of public hardship, however, particularly in the context of the overall preference for such alternatives wherever warranted, raises the question whether the statute imposes a further duty to review all debt collection cases for the collection’s impact on the public welfare.
III. Application of the State Agency’s Own Published Procedures and Criteria
The State Finance Law does not define “public hardship,” nor establish criteria for an agency to determine when a debtor’s fiscal circumstances cause public hardship so as to *6 warrant an ameliorative collection agreement. As contemplated by State Finance Law § 18 (7), however, the New York State Division of the Budget has promulgated guidelines to carry out section 18 (10), which are compiled in a public document available through the Division of the Budget’s official Web site (<www.budget.state.ny.us/bprm/K/KOOO.html> [last accessed Apr. 22, 2002]).
A. Judicial Notice
The court may take judicial notice of matters of public record, such as an “incontrovertible official document” or other “reliable documents, the existence and accuracy of which are not disputed” (Brandes Meat Corp. v Cromer, 146 AD2d 666, 667 [2d Dept 1989]), and information “culled from public records.” (Matter of Siwek v Mahoney, 39 NY2d 159, 163 n 2 [1976]; see, e.g., Matter of Soronen v Comptroller of State of N.Y., 248 AD2d 789, 791 n 1 [3d Dept 1998]; Matter of 60 Mkt. St. Assoc. v Hartnett, 153 AD2d 205, 208 n [3d Dept 1990].) Such official, public information includes the guidelines in the Budget Policy and Reporting Manual of the State Division of the Budget, accessible to the court from the Division’s electronic database. (Matter of Scuderi, 247 AD2d 393, 394 [2d Dept 1998]; Brandes Meat Corp. v Cromer, 146 AD2d at 667; Samson Moving & Stor. Corp. v Drake Bus. School, NYLJ, Feb. 1, 2001, at 29, col 2 [Civ Ct, NY County].)
These indisputable guidelines, available from an official repository, apply to SIF and are not only known to SIF, but open to all. Under such circumstances it would be unreasonable for the court to ignore what is a matter of official, published record, “solely because such record and evidence of the certainty of the fact, so easily accessible and available, was not produced” by a party. (People v Sowle, 68 Misc 2d 569, 572 [Fulton County Ct 1971]; see Samson Moving & Stor. Corp. v Drake Bus. School, NYLJ, Feb. 1, 2001, at 29, col 2.) Therefore the court may take judicial notice of these guidelines at any stage of the litigation, including the determination of a motion, without further authentication or foundation, and even though no party has presented evidence of this material. (Brandes Meat Corp. v Cromer, 146 AD2d at 667; Rex Paving Corp. v White, 139 AD2d 176, 182 n 2 [3d Dept 1988]; People v Sowle, 68 Misc 2d at 571; Associated Gen. Contrs. of Am. v Lapardo Bros. Excavating Contrs., 43 Misc 2d 825, 826 [Sup Ct, Albany County 1964].)
B. The Manual’s Guidelines
The Manual “establishes the goals and responsibilities prescribed by the Director of the Budget for all State agencies *7 regarding the * * * collection of non-tax debt owed to the State” (<www.budget.state.ny.us/bprm/K/K010.html> [last accessed Apr. 22, 2002] § K-010 at 1) and “the establishment of deferred payment arrangements” (<www.budget.state.ny.us/ bprm/K/K036.html> [last accessed Apr. 22, 2002] § K-036 [C] at 1). The Manual requires state agencies to “develop internal written policies and procedures regarding the granting and processing of deferred payment arrangements.” (Id. § K-036 [H] at 4.) SIF has not presented any such policies or procedures, nor has the court found any in the public domain.
The Manual characterizes deferred payment plans under State Finance Law § 18 (10) as “the most viable method to collect an outstanding debt from * * * a business experiencing fiscal hardship” (§ K-036 [C] at 1), and provides that agencies “should enter into a deferred payment arrangement with a debtor when this arrangement provides the most efficient and effective method of collecting a past-due debt.” (§ K-036 [A] at 1.) These provisions regarding deferred payment diverge from the statute’s precise focus.
State Finance Law § 18 (10) distinguishes between installment plans, which may require an immediate, initial payment, however reduced, and deferred payment plans, which permit debtors to pay nothing for a period. According to the statute, deferred payment plans are available only in cases of public hardship, when the agency must offer deferred payment, an installment plan, or another reasonable arrangement to avoid public hardship, whether or not the arrangement effectuates efficient and effective debt collection from the agency’s fiscal perspective.
The Manual does delineate criteria for determining whether collection poses a public hardship: when, “based on the judgment of the agency,” the “debtor provides employment, services and/or goods which are important to the public welfare.” (§ K-036 [C] [1] [b] at 2.) The Manual does not further specify, however, how an agency is to determine when the loss of a debtor’s employment, services, or goods negatively impacts the public welfare. The Manual twice refers to a debtor’s “request” for a deferred payment arrangement (§ K-036 [D] at 2; § K-036 [I] at 6), implying that a public hardship determination is to be made only upon the debtor’s request.
C. The Guidelines’ Interpretation of State Finance Law § 18 (10)
While the court takes judicial notice of the Division of the Budget’s Manual, in interpreting State Finance Law § 18 (10) the agency’s guidelines are to be accorded little weight. The *8 Division of the Budget may have competence and expertise in determining whether a payment arrangement will implement efficient and effective debt collection from the State’s fiscal perspective. This agency’s special competence and expertise, however, are not in determining when and what type of an ameliorative collection agreement is to be offered to reduce public hardship. This determination is dependent solely on an accurate reading of the statute, not on the Division of the Budget’s operations or factual data about which the Division has particular understanding. (Matter of Dworman v New York State Div. of Hous. & Community Renewal, 94 NY2d 359, 371 [1999]; Matter of Union Indem. Ins. Co. of N.Y., 92 NY2d 107, 115, 124 [1998]; Matter of Gruber, 89 NY2d 225, 231-232 [1996]; Drew v Schenectady County, 88 NY2d at 246.)
The statutory language plainly contemplates that wherever the financial impact of collection is adverse to the public interest, a state agency, here SIF, must offer a reasonable payment arrangement to avoid that adverse impact, whether or not the debtor requests the arrangement, and whether or not it best effectuates debt collection. (See, e.g., Gruber, 89 NY2d at 232; Matter of Trump-Equitable Fifth Ave. Co. v Gliedman, 57 NY2d 588, 597; Greystone Hotel Co. v City of N.Y. Bd. of Stds. & Appeals, 214 AD2d 467 [1st Dept 1995]; Matter of Krauskopf v Perales, 173 AD2d 387, 389 [1st Dept 1991].) Neither these limitations, nor a limitation to deferred payment arrangements only, find any basis in the statute. (See, e.g., Matter of Action Elec. Contrs. Co. v Goldin, 64 NY2d 213, 223 [1984]; Matter of Hamburg v McBarnette, 195 AD2d 275, 277 [1st Dept 1993].)
Deference to administrative interpretation does not justify these substantive transformations of the . governing statutory mandate. They derive from the Division of the Budget’s own interpretation of the statute and not any administrative expertise. (Matter of Union Indem. Ins. Co. of N.Y., 92 NY2d at 124; Matter of Town of Brookhaven v New York State Bd. of Equalization & Assessment, 88 NY2d 354, 360 [1996].) They engraft eligibility conditions and payment plan restrictions that cut out debtors who would qualify for a reasonable collection arrangement. (Matter of Union Indem. Ins. Co. of N.Y., 92 NY2d at 112, 119; Trump-Equitable Fifth Ave. Co. v Gliedman, 57 NY2d 588, 594 [1982].) Particularly where the agency’s interpretation contravenes the statute’s plain language and purpose, that interpretation is not to be relied on. (Doctors Council v New York City Employees’ Retirement Sys., 71 NY2d 669, 676 [1988]; Action Elec. Contrs. Co. v Goldin, 64 NY2d at *9 223; Trump-Equitable Fifth Ave. Co. v Gliedman, 57 NY2d at 597; Grey stone Hotel Co. v City of N.Y. Bd. of Stds. & Appeals, 214 AD2d 467.)
Moreover, in this case, Nancy Apatow, vice-president of Pet Lift and under Brooklyn Barber letterhead, communicated with SIF in March 1997, explaining the hardship collection posed: “nearly losing our business.” (Affidavit of Nancy Apatow, exhibit F at 2.) Although she did not articulate a request for a deferred payment arrangement to which the guidelines exclusively refer, the letter repeatedly expresses a desire for an ameliorative payment arrangement:
“I have been trying for 4 years to work with you on billing problems * * * In trying to resolve this matter * * *
“Problems which I have been trying to clear up * * *
“In the interest of avoiding further costs * * * we would like to reconcile this matter * * * We would also like * * * the collections department to pull this file from Dun and Bradstreet Collections.
“Please contact me as soon as possible, for I will be readily available to meet with you.” (Id. at 1-2.)
She alleges this letter was “part of a massive effort on my part to * * * negotiate a reasonable settlement.” (Affidavit of Nancy Apatow H 3.) Yet, according to defendants, SIF failed to consider these explicit overtures, ignoring the state’s own guidelines. This departure from the guidelines further undermines any basis for relying on them to construe State Finance Law § 18 (10). (Doctors Council v New York City Employees’ Retirement Sys., 71 NY2d at 676.)
D. The Issue to be Determined under Section 18 (10)
The only conceivable way SIF can satisfy the statutory standard is for SIF to evaluate all its debt collection cases, regardless of a request, to determine whether immediate collection poses a public hardship. (Dworman v New York State Div. of Hous. & Community Renewal, 94 NY2d at 374-375.) Although the statutory obligation to offer payment arrangements is triggered only “where such state agency determines” that immediate collection poses a public hardship, if the agency could choose when to make the determination, that discretion would gut the statutory mandate. (State Finance Law § 18 [10].)
Under the proper standard, the statute also mandates that payment arrangements not correspond purely to interests of efficient and effective debt collection. The statute plainly reflects *10 a legislative purpose that amelioration of public hardship is to be a cost of collection. (See Matter of Union Indem. Ins. Co. of N.Y., 92 NY2d at 119; Hamburg v McBarnette, 195 AD2d at 277.)
SIF admits defendants disputed the amount of the debt in the parties’ failed collection negotiations. SIF’s underwriter Rosalind Archibald alleges that, in response to defendants’ contentions, “Upon information and belief * * * SIF through its agent Dun and Bradstreet, made an offer to defendants as outlined in the letter from SIF to Dun and Bradstreet.” (Affidavit of Rosalind Archibald 6.) The letter offers neither a deferred nor an installment payment arrangement, but does offer a reduced payment that may constitute a reasonable payment arrangement to avoid hardship. SIF presents no affidavit on personal knowledge or other evidence in admissible form that such an offer actually was communicated to defendants, however, nor any excuse for the failure to obtain the evidence in more acceptable form for summary judgment purposes. (Grasso v Angerami, 79 NY2d 813, 814 [1991]; Bendik v Dybowski, 227 AD2d 228, 229 [1st Dept 1996]; see Chianese v Meier, 246 AD2d 328, 329 [1st Dept 1998]; Siegel v Wank, 183 AD2d 158, 161 [3d Dept 1992].)
Nevertheless, whether an offer was made is not the central issue. Nor is the material factual issue “whether the commencement of this action posed a hardship to the public,” as SIF contends. (Affidavit of Rosalind Archibald 8.) The statute requires a public hardship review as a predicate to debt collection. If SIF attempts to collect without the predicate review, SIF’s failure to conduct the necessary review affords defendants a defense to an action to collect. Whether SIF conducted the review before commencing this action is the material factual issue precluding summary judgment.
SIF’s evidence that SIF at least communicated an offer to SIF’s agent for the purpose of relaying the offer to defendants, an offer that may constitute a reasonable arrangement to avoid public hardship, indicates SIF may have conducted the requisite review and in fact determined that immediate collection of the full amount claimed posed a public hardship. SIF also may have conducted the review and determined that immediate collection did not pose a public hardship.
In neither case does the evidence at this stage indicate that SIF communicated its determination and reasons to defendants, to afford them an opportunity to contest either the reasonableness of the payment arrangement offered or the *11 absence of public hardship. (E.g., Logan v Zimmerman Brush Co., 455 US 422, 430 [1982]; Matter of Garofalo v Dowling, 223 AD2d 770, 772 [3d Dept 1996]; Matter of Bahouth v Sardino, 125 AD2d 990, 991 [4th Dept 1986].) If SIF failed to make any determination whether immediate collection posed a public hardship, SIF would have to make that initial evaluation, under the proper standard (Dworman v New York State Div. of Hous. & Community Renewal, 94 NY2d at 374-375), and provide defendants the requisite notice to enable them to pursue any available administrative remedies (e.g., Matter of Long Is.-Airports Limousine Serv. Corp. v State of N.Y. Dept. of Transp., 170 AD2d 747, 748 [3d Dept 1991]; Matter of Rauer v State Univ. ofN.Y., 159 AD2d 835, 836 [3d Dept 1990]), before litigating in the court. (Lehigh Portland Cement Co. v New York State Dept. of Envtl. Conservation, 87 NY2d 136, 140 [1995]; Matter of Frumoff v Wing, 239 AD2d 216, 217 [1st Dept 1997]; Galin v Chassin, 217 AD2d 446, 447 [1st Dept 1995]; Matter of Clemente v New York State Freshwater Wetlands Appeals Bd., 226 AD2d 718, 719-720 [2d Dept 1996].)
Pet Lift insists SIF never made any offer, but a determination of no public hardship would require no offer. Pet Lift has not established that SIF failed to make a public hardship determination. As the proponent of summary judgment, Pet Lift bears the burden to make that affirmative showing, through admissible evidence, regardless of any insufficiency in SIF’s opposition. (Ayotte v Gervasio, 81 NY2d 1062, 1063 [1993]; Winegrad v New York Univ. Med. Ctr., 64 NY2d 851, 853 [1985]; Martinez v One Plus Rental Sys., 247 AD2d 594 [2d Dept 1998]; McCue v Battaglia, 211 AD2d 625, 626 [2d Dept 1995].) Given that the court only now holds that State Finance Law § 18 (10) mandates that hardship determination, the current record is inconclusive on this issue. Moreover, in deciding Pet Lift’s summary judgment motion, the court must construe the evidence in the light most favorable to SIF. (SSBSS Realty Corp. v Public Serv. Mut. Ins. Co., 253 AD2d 583, 584-585 [1st Dept 1998]; Martin v Briggs, 235 AD2d 192, 196 [1st Dept 1997].) Particularly when viewed according to this standard, SIF’s allegations that it determined an offer should be made preclude summary judgment in Pet Lift’s favor.
IV. Interpretation of State Finance Law § 18 (5)
A. The Statutory Prerequisites to Recovery of Collection Costs
State Finance Law § 18 (5) provides:
“[U]nless provided otherwise by contract * * * a *12 debtor that fails to make payment of a debt subject to this section within ninety days of receipt by the debtor of the first billing invoice or notice may be assessed an additional collection fee, not to exceed twenty-two percent of the outstanding debt which is owed, by a state agency to cover the cost of processing, handling and collecting such debt. The assessed collection fee charge may not exceed the agency’s estimated cost of processing, handling and collecting such debt.”
SIF takes the position that section 18 (5) automatically entitles SIF to collection costs of 22% of the debt, without SIF establishing any reasonable costs. SIF relies on the statute’s legislative history, which recounts that: “Currently, State agencies that successfully pursue payment of delinquent accounts by using private collection agencies or the State Attorney General’s Civil Recoveries Bureau must pay a rate of between 22 to 35 percent of the amount of recovery.” (Mem of State Exec Dept, 1992 McKinney’s Session Laws of NY, at 2528.) This memorandum simply indicates state agencies’ experiences when pursuing specific collection methods. Notably, SIF has used neither of those methods here. In any event, the legislative history does not abrogate section 18 (5)’s express language that the collection fee is “not to exceed” 22% of the debt and is “to cover the cost” and “not exceed the agency’s estimated cost” of collection. Therefore SIF must establish at least an “estimated cost” of the actual collection in this case and may not recover 22% of the debt if that cost is less. (State Finance Law § 18 [5].)
SIF’s recovery of collection costs further depends on defendants’ receipt of a bill from SIF. (Id.; Lawyers’ Fund for Client Protection of State of N.Y. v Gateway State Bank, 239 AD2d 826, 828 [3d Dept 1997].) Although SIF’s witness attests to various bills and statements of account relating to defendants, nowhere does he attest that a bill or statement was transmitted to defendants. The mere presentation of statements bearing defendants’ names does not support a presumption that the statements were transmitted and received. (Bossuk v Stein-berg, 58 NY2d 916, 919 [1983]; Nassau Ins. Co. v Murray, 46 NY2d 828, 829-830 [1978]; see Matter of Francis v Wing, 263 AD2d 432, 433 [1st Dept 1999].)
Before a collection fee may be awarded, the debt also must be a “liquidated sum due and owing * * * which has accrued * * * through contract” (State Finance Law § 18 [1] [b]), and is *13 “determined to be due.” (Lawyers’ Fund for Client Protection of State of N.Y. v Gateway State Bank, 239 AD2d at 828; see Lawyers’ Fund for Client Protection of State of N.Y. v Bank of Leumi Trust Co. of N.Y., 256 AD2d 836, 838 [3d Dept 1998].) As painstakingly explained by SIF’s own witness, the workers’ compensation insurance policy issued by SIF to defendants does not fix a sum to be paid for premiums. (E.g., Consolidated Rail Corp. v MASP Equip. Corp., 67 NY2d 35, 40 [1986].) Insurance policies where the insured risks are fixed when coverage is issued allow the premiums also to be fixed at that point, but “calculation of the premium due for workers’ compensation is different.” (Affidavit of Vincent M. Troianiello 22.) The premiums depend on later audits of various factors, such as the number of employees insured, their job classifications, and their wages.
Defendants, moreover, specified various disputes as to the sums to be paid based on SIF’s audits: duplicated and uninves-tigated “bogus” claims, ratings unadjusted “to correspond with actual loss,” ratings adjustments and payments not credited, and employee misclassifications. (Affidavit of Nancy Apatow, exhibit F at 1-2.) Particularly given these claimed discrepancies in the audit determinations, along with the lack of specification in the policy, SIF has the burden to establish that the debt owed meets section 18 (1) (b)’s definition before SIF may recover collection costs. (See Employers Ins. of Wassau v Tri Star Bldg. Corp., 133 AD2d 664 [2d Dept 1987].)
B. The Factual Prerequisites to Recovery
The material factual issue as to whether SIF conducted the required public hardship review before commencing this action, which precludes summary judgment in Pet Lift’s favor, likewise precludes any judgment on SIF’s claims for the unpaid premiums and costs of their collection. If defendants prevail at trial on SIF’s failure to conduct the required review, that failure would bar this action to collect the debt until SIF satisfies the statutory condition to collection. Until SIF prevails on this issue, as well as satisfying the burden to establish defendants’ receipt of a bill (State Finance Law § 18 [5]), and a “liquidated sum” determined to be due (§ 18 [1] [b]), neither may SIF recover its collection costs.
V. Conclusion
Defendants may successfully defend against this action to recover a debt owed to a state agency if at trial they prove that the agency never (1) determined whether immediate collection would jeopardize their fiscal viability and thus cause public *14 hardship, and (2) communicated that determination to them. Even if the agency proves it did make that determination and communicated it to defendants, they still may prevail if the agency made a determination of public hardship, but never offered them any reasonable arrangement to reduce public hardship. (State Finance Law § 18 [10].) Finally, to recover on a claim for collection costs, the agency not only must prevail on the claimed debt, but also must prove that defendants received a bill for that debt and that the debt was a liquidated sum determined to be due. (State Finance Law § 18 [1] [b]; [5].) Upon the evidence now before the court, it cannot decide these issues via summary judgment and therefore denies defendant Pet Lift that relief. (CPLR 3212 [b].)
[Portions of opinion omitted for purposes of publication.]