OPINION OF THE COURT
Steven M. Statsinger, J.
Defendant, charged with bail jumping in the third degree (Penal Law § 215.55), moves to dismiss, arguing that the information is facially insufficient. Here, however, the information alleges facts that make out a prima facie case of bail jumping. In any event, the court takes judicial notice of its own records in the underlying case which, as of the date of this opinion, is still open. Those records contain facts that make out a prima facie case of bail jumping.
Finally, as a matter of apparent first impression, the court concludes that the filing of a copy of defendant’s rap sheet converted the misdemeanor complaint into an information.
Accordingly, for all these reasons, defendant’s motion to dismiss is denied.
*622 I. Factual Background
A. The Allegations
According to the information, defendant was released on his own recognizance in a criminal case in which he was charged with a misdemeanor, and was required to appear in court on a future date. He then failed to appear in court on that date, or on any date within 30 days of that date.
B. Legal Proceedings
Defendant was arraigned on October 28, 2015, on a misdemeanor complaint charging him with bail jumping in the third degree, in violation of Penal Law § 215.55. The court set bail, and adjourned the case for conversion.
On November 2, 2015, the People filed and served defendant’s rap sheet, and the court deemed the instrument converted to an information. Defendant filed the instant motion to dismiss on December 30, 2015, and the People responded on January 13, 2016. The matter has been sub judice since then.
II. The Information
The misdemeanor complaint, sworn out by Detective James Cleary, provides that
“I have examined the defendant’s rap sheet, which is a digest of records kept and maintained in the regular course of business by the State of New York and have determined the following:
“• by court order, the defendant was released from custody on his own recognizance and allowed to remain at liberty upon the condition that the defendant subsequently appear in person;
“• on July 28, 2014, in New York City Criminal Court Part D, in connection with Docket No. 2014NY003458, a criminal proceeding charging the defendant with a misdemeanor, the defendant failed to appear in court as required on that date or within 30 days after that date.”
As noted above, the People converted the misdemeanor complaint into an information by filing a copy of defendant’s rap sheet.
*623 III. Discussion
The information here is facially sufficient because it contains nonhearsay allegations that lead to a reasonable inference as to each and every element of bail jumping in the third degree.
A. Facial Sufficiency in General
A misdemeanor information serves the same role in a misdemeanor prosecution that an indictment serves in a felony prosecution: It ensures that a legally sufficient case can be made against the defendant. (People v Dumay, 23 NY3d 518 [2014]; People v Alejandro, 70 NY2d 133, 138-139 [1987].) Accordingly, a misdemeanor information must set forth “nonhearsay allegations which, if true, establish every element of the offense charged and the defendant’s commission thereof.” (People v Kalin, 12 NY3d 225, 228-229 [2009], citing People v Henderson, 92 NY2d 677, 679 [1999], and CPL 100.40 [1] [c].) This is known as the “prima facie case requirement.” (Kalin, 12 NY3d at 229 [emphasis added].)
The prima facie case requirement does not necessitate that the information allege facts that would prove defendant’s guilt beyond a reasonable doubt. (People v Jennings, 69 NY2d 103, 115 [1986].) Rather, the information need only contain allegations of fact that “give an accused notice sufficient to prepare a defense and are adequately detailed to prevent a defendant from being tried twice for the same offense.” (People v Casey, 95 NY2d 354, 360 [2000].) A court reviewing for facial insufficiency must subject the allegations in the information to a “fair and not overly restrictive or technical reading” (id.), assume that those allegations are true, and consider all reasonable inferences that may be drawn from them. (CPL 100.40, 100.15; People v Jackson, 18 NY3d 738, 747 [2012]; see also Casey, 95 NY2d at 360.)
B. The information is facially sufficient.
To sufficiently plead a violation of Penal Law § 215.55, the People must allege that the defendant “having been released from custody or allowed to remain at liberty in connection with a criminal charge . . . fail[ed] to appear in court on the required date or voluntarily within thirty days thereafter.” (People v Coppez, 93 NY2d 249 [1999] [citations and internal quotation marks omitted]; People v Harris, 54 AD2d 739 [2d Dept 1976].) The defendant’s culpable mental state, or lack thereof, is immaterial at the pleading stage. (People v Man *624 itaras, 55 AD2d 629 [2d Dept 1976].) In addition, the instrument need not allege facts that might negate the affirmative defenses enumerated in Penal Law § 215.59. (People v Villarreal, 27 Misc 3d 269 [Crim Ct, Queens County 2009].)
Here, a prima facie case as to each of these elements is made out by the information. It alleges that defendant was released on his own recognizance in a criminal case in which he was charged with a misdemeanor, and that he failed to appear in court on a required date or within 30 days thereafter. Nothing more is required.
C. The court can take judicial notice of the content of the court file of the underlying case.
Alternatively, the People invite the court to take judicial notice of the records relating to the underlying case. (Herschlikowicz aff ¶ 6.) The court accepts the invitation.
Judicial notice “is knowledge which a Court takes of a matter without evidence having been introduced to establish it.” (People v Sowle, 68 Misc 2d 569, 571 [Fulton County Ct 1971].) “Whether courts will take judicial notice of matters of fact depends on the nature of the subject, the issue involved and the apparent justice of the case.” (Id.) Examples of the sorts of facts of which a court may take judicial notice are “geographical facts and the location of streets” and “public records.” (Id.)
Courts are not required to take judicial notice of matters of fact, and whether they should do so “depends on the nature of the subject, the issue involved and the apparent justice of the case.” (Hunter v New York, Ontario & W. R.R. Co., 116 NY 615, 621 [1889].) Not all facts are within the bounds of judicial notice. For example, in Vann v Ionta (157 Misc 461, 463 [Mun Ct, Queens County 1935]), the court noted that even if a judge had personal knowledge of “the adaptability of some barbers to jest and humor so as to entertain their patrons,” that would “not permit the taking of judicial notice.”
But “matters of public record,” such as “an incontrovertible official document or other reliable documents, the existence and accuracy of which are not disputed . . . and information culled from” them are fine. (Commissioners of State Ins. Fund v Brooklyn Barber Beauty Equip. Co., 191 Misc 2d 1, 6 [Civ Ct, NY County 2001] [citations and internal quotation marks omitted]; see e.g. Matter of Sunhill Water Corp. v Water Resources Commn., 32 AD2d 1006 [3d Dept 1969] [taking judicial notice of the content of records of a county water commission]; People v Madison, 8 AD3d 956 [4th Dept 2004] [taking judicial notice of criminal indictment, a “public record”].)
*625 A court may take judicial notice of public records, including information “culled from” them (Matter of Siwek v Mahoney, 39 NY2d 159, 163 n 2 [1976]), at “any stage of the litigation from motion practice to appeals” (Associated Gen. Contrs. of Am., N.Y. State Ch. v Lapardo Bros. Excavating Contrs., 43 Misc 2d 825, 826 [Sup Ct, Albany County 1964]). Here, the court takes judicial notice of the court file in docket No. 2014 2014NY003458, which is pending before this court. (See People v Perez, 195 Misc 2d 171 [Crim Ct, NY County 2003] [a court may take judicial notice of its own records, and facts of which judicial notice may be taken need not be pleaded in an information].)
While it is true that the court in Perez declined to take judicial notice of the content of the judicial records at issue there, this is only because the record of the underlying case had been sealed. That court was of the view that the sealing statute, CPL 160.50, would not permit this absent a motion by the prosecution for an unsealing order. (Id.) Here, however, unlike in Perez, the case that underlies the bail jumping prosecution is still open.
And, taking judicial notice of the record of that case, the court concludes that: (1) defendant was arraigned on January 10, 2014, in Part AR-3A, on a misdemeanor complaint charging him with two counts of endangering the welfare of a child; (2) the court released the defendant on his own recognizance; (3) on July 28, 2014, the defendant, having twice previously failed to appear, failed to appear in Part D and the court issued a bench warrant; and (4) on October 28, 2015, more than 30 days later, defendant was involuntarily returned on that warrant.
These judicially noticed facts clearly make out a prima facie case of bail jumping in the third degree under Penal Law § 215.55.
D. The filing of defendant’s rap sheet converted the misdemeanor complaint into an information.
Finally, the court observes that defendant’s true complaint, although inaccurately styled as a motion to dismiss for facial insufficiency, is that the filing of his rap sheet did not convert the misdemeanor complaint to an information. Indeed, the only case he cites in support of his argument for dismissal is Perez, which held that the filing of an uncertified copy of a Criminal Records Information Management System (CRIMS) printout did not convert a misdemeanor complaint charging the defendant with violating Penal Law § 215.55 to an information. (195 *626 Misc 2d at 171.) Contrary to defense counsel’s suggestion, however, the court in Perez did not dismiss the case based on this ruling.*
Preliminarily, the court notes that defense counsel was present when the People filed the rap sheet and the court deemed the instrument converted. Counsel did not object then, and does not argue that there was any legal or practical impediment to her doing so at that time. There is clearly no legal basis for counsel to be rearguing the point now. (Cf. People v Defreitas, 48 Misc 3d 569 [Crim Ct, NY County 2015].)
But even if there were, the court would adhere to its original ruling. According to Perez, a CRIMS printout—a record of computerized docket entries that is maintained by the Office of Court Administration—is “a list of appearance dates in defendant’s earlier case together with cryptic abbreviations which seem to suggest that a warrant was issued on” a particular date. (195 Misc 2d at 174.) The printout there, however, bore “no certification by a public officer as to its authenticity, accuracy or status as an official record,” nor did it “bear a certification or affidavit that the document was made and kept in the regular course of business by the New York State Office of Court Administration.” (Id.) This uncertified printout, according to Perez, did not convert the misdemeanor complaint: “the complaint cannot be deemed converted to an information by reason of the filing of the CRIMS.” (Id. at 175.)
Addressing defense counsel’s implicit argument that the instant case is unconverted, the court first notes that whether the filing of a CRIMS printout converts the misdemeanor complaint to an information in a bail jumping case is a matter of some dispute that has not been resolved by an appellate court. In contrast to Perez, for example, is People v Branch (19 Misc 3d 255 [Crim Ct, NY County 2007]). Branch held that the filing of a CRIMS printout “provided the requisite nonhearsay allegations to convert the accusatory instrument to a misdemeanor information.” (Id. at 257.) While it is true that in Branch the CRIMS printout was certified and in Perez it was not, this court is generally of the view that, while certified copies of official documents might be necessary at trial, they are not necessary at the pleading stage. (E.g. People v Araujo, 48 Misc 3d 1219[A], 2015 NY Slip Op 51169[U], *3-4 [Crim Ct, NY *627 County 2015] [“In a criminal contempt case, all that is required for conversion, at least with respect to the order of protection, is something to establish the deponent’s basis of knowledge of the existence, validity and terms of the order of protection. A certified copy of the order of protection is not necessary” (emphasis omitted)].)
In any event, neither Perez nor Branch is apposite here. This case was converted by the filing of a copy of defendant’s rap sheet—a full and official documentation of his entire criminal history—and not by a CRIMS printout. And, while it appears that no court has considered whether the filing of a rap sheet, whether certified or uncertified, can convert a bail jumping complaint into an information, this court has little trouble in reaffirming its initial conclusion that it does.
In New York, rap sheets are generated by the New York Division of Criminal Justice Services (DCJS), which is designated by statute, article 35 of the Executive Law, as the central repository for the criminal history record information of any individual who has a criminal history, based on that individual’s fingerprints. The information contained in a rap sheet is furnished to the DCJS by a variety of agencies, including courts, police departments, probation departments, and the Department of Corrections and Community Supervision. The DCJS is under a statutory duty to establish and maintain
“a central data facility with a communication network serving qualified agencies anywhere in the state, so that they may . . . contribute information and . . . have access to information contained in the central data facility, which shall include but not be limited to such information as criminal record, personal appearance data, fingerprints, photographs, and handwriting samples.” (Executive Law § 837 [6].)
Given this, the court has little difficulty concluding that the filing of a defendant’s rap sheet, whether certified or uncertified, converts a misdemeanor complainant charging the defendant with bail jumping into an information. A document can be “so patently trustworthy as to be self-authenticating.” (People v Kennedy, 68 NY2d 569, 577 n 4 [1986]; Elkaim v Elkaim, 176 AD2d 116, 117 [1st Dept 1991] [finding no reason to exclude from evidence bank statements that were “reliable” and “perfectly trustworthy” even though a business records foundation had not been laid].) If ever there was such a docu *628 ment, it is a New York State rap sheet generated, and based on information maintained by, the DCJS. This is so even though there remains some possibility that a New York State rap sheet might occasionally contain erroneous information. This court remains convinced that, even in the rare case where this is so, the error was not made by the DCJS, and thus that the rap sheet is a trustworthy and accurate indication of the information that was furnished to the DCJS.
Finally, the court notes People v Etienne (192 Misc 2d 90 [Nassau Dist Ct 2002]), which undertook a similar analysis with respect to DMV records: “[I]n some cases the relationship between . . . two entities and the nature of the records in question may give the party using the information sufficient familiarity with the records to allow the admission of the evidence and to provide foundation testimony for their admittance” without the need for laying a traditional hearsay foundation. This court concludes that the same is true for a DCJS rap sheet.
Accordingly, this court concludes—again—that the filing of the defendant’s rap sheet in connection with a misdemeanor complaint charging the defendant with bail jumping converts the complaint into an information.
IV. Conclusion
Defendant’s motion to dismiss for facial insufficiency is denied.

 Nor should it have. The property remedy for finding that a misdemeanor complaint is not converted is an adjournment for conversion, not dismissal.