OPINION OF THE COURT
Louis L. Nock, J.
The defendant moves to dismiss the information and preclude the use at trial of the defendant’s prior criminal convictions or bad acts, and seeks a bill of particulars and discovery. The People oppose the motion.
Background
The defendant was arraigned on September 16, 2015, upon a misdemeanor information charging him with violating Administrative Code of the City of New York § 10-603 (d) (i), failure to make the first personal appearance at the Gun Offender Monitoring Unit (GOMU).
The defendant was convicted in Queens County Supreme Court on July 16, 2012, upon a plea of guilty to Penal Law § 265.03 (3), criminal possession of a weapon in the second degree — possession of a loaded firearm, a class C felony. On September 10, 2012, the defendant was sentenced to a term of imprisonment of 42 months, followed by 30 months of post-release supervision.
Under the Gun Offender Registration Act (GORA) (Administrative Code of City of NY, tit 10, ch 6), Penal Law § 265.03 (3) *620 is a gun offense (Administrative Code § 10-602 [e]). A person convicted of a gun offense in a court located within the City of New York is a gun offender (Administrative Code § 10-602 [d]). Pursuant to Administrative Code § 10-603 (a), a gun offender is required to register with the New York City Police Department at the time sentence is imposed. Furthermore, pursuant to Administrative Code § 10-603 (d) (i), a “gun offender who is required to register shall personally appear at such office as the commissioner may direct [GOMU] within forty-eight hours of. . . release [from incarceration].” It is this failure to personally appear at the GOMU offices that the defendant is charged with.
The Accusatory Instrument is Facially Sufficient
A misdemeanor information is facially sufficient if the non-hearsay facts stated in said information, together with any supporting depositions, establish each and every element of the offense charged, as well as the defendant’s commission of said crime (CPL 100.40). For an information to be sufficient and, thereby, make out a prima facie case, it does not need to allege facts that, if proved and taken alone, could establish a defendant’s guilt beyond a reasonable doubt (People v Jennings, 69 NY2d 103 [1986]). Rather, an information need only allege facts sufficient to enable a defendant to have “notice sufficient to prepare a defense” and that such facts be “adequately detailed to prevent a defendant from being tried twice for the same offense” and that such facts “be given a fair and not overly restrictive or technical reading” (People v Casey, 95 NY2d 354, 360 [2000]). “An information is valid for jurisdictional purposes if it contains nonconclusory factual allegations that, if assumed to be true, address each element of the crime charged, thereby affording reasonable cause to believe that defendant committed that offense” (People v Jackson, 18 NY3d 738, 741 [2012] [citation omitted]). Furthermore, the court must consider all reasonable inferences that may be drawn from the facts set forth in the information (see People v Jackson, 18 NY3d 738 [2012]; People v Barber, 42 Misc 3d 1225[A], 2014 NY Slip Op 50193[U] [Crim Ct, NY County 2014]).
The accusatory instrument herein contains factual allegations which, if true, establish each element of the crime charged. An accusatory instrument charging Administrative Code § 10-603 (d) (i) must allege that the defendant is: (i) a gun offender; (ii) required to register; and (iii) failed to person *621 ally appear within 48 hours of release from incarceration. Here, the accusatory instrument alleges that the defendant was convicted of violating Penal Law § 265.03 (3), a gun offense. The instrument further alleges that “the defendant is required to register personally.” It then goes on to allege “that the defendant was released from a period of incarceration on August 21, 2015, and the defendant did not register personally at GOMU within 48 hours of his release or at any time thereafter.” Accordingly, the accusatory instrument meets the facial sufficiency requirements for the subject charge.
The Accusatory Instrument is an Information
Defendant’s counsel incorrectly contends that certified copies of Department of Corrections records are needed to convert the accusatory instrument to an information. Defendant’s Rap Sheet is Admissible as a Public Record
“[T]here is a recognized exception to the hearsay rule, in that certain public records may be received in evidence” and that public records need not be open to public inspection (People v Nisonoff, 293 NY 597, 603 [1944], cert denied 326 US 745 [1945]). “Data culled from public records is, of course, a proper subject of judicial notice” (Matter of Siwek v Mahoney, 39 NY2d 159, 163 n 2 [1976]). “[A] court may take judicial notice of its own records” (Casson v Casson, 107 AD2d 342, 344 [1st Dept 1985], appeal dismissed 65 NY2d 637 [1985]). Specifically, the court may, and herein does, take judicial notice of the defendant’s New York State Criminal History Information (the “rap sheet”), contained in the court file (see People v Suarez, 51 Misc 3d 620, 627 [Crim Ct, NY County 2016] [“the filing of a defendant’s rap sheet, whether certified or uncertified, converts a misdemeanor complainant charging the defendant with bail jumping into an information” (emphasis added)]). The defendant’s rap sheet indicates that he was convicted of Penal Law § 265.03 (3) on September 10, 2012, in New York State Supreme Court, Queens County, and was released from prison August 21, 2015. The allegations in the information correspond to the facts found in the rap sheet. The rap sheet sets forth facts sufficient to establish that the defendant is a gun offender who is required to register, and further sets forth the date of his release from incarceration. Furthermore, the rap sheet indicates that the defendant’s point of release to the Division of Parole was the Queensboro Correctional Facility, which is located in the Borough of Queens in New York City. Therefore, *622 the rap sheet also establishes the defendant’s presence in New York City upon his release.
Defendant’s Rap Sheet is Also Admissible as a Business Record
Distinct of the rap sheet’s probative status as a public record, it is admissible pursuant to CPLR 4518 (a) as a business record. “Law enforcement agencies constitute businesses for purposes of the rule” (People v Rawlins, 10 NY3d 136, 149 [2008] [citation and internal quotation marks omitted], cert denied sub nom. Meekins v New York, 557 US 934 [2009]). The foundation requirements of CPLR 4518 (a) are
“first, that the record be made in the regular course of business — essentially, that it reflect a routine, regularly conducted business activity, and that it be needed and relied on in the performance of functions of the business; second, that it be the regular course of such business to make the record (a double requirement of regularity) — essentially, that the record be made pursuant to established procedures for the routine, habitual, systematic making of such a record; and third, that the record be made at or about the time of the event being recorded— essentially, that recollection be fairly accurate and the habit or routine of making the entries assured” (People v Kennedy, 68 NY2d 569, 579-580 [1986]).
Defendant’s rap sheet satisfies each of these requirements. Pursuant to Executive Law §§ 837-b (1) and 837 (4) (c), on a monthly basis, it is
“the duty of the state administrator of the unified court system; and of every sheriff, county or city commissioner of correction and head of every police department, state, county, or local, and also railroad, steamship, park, aqueduct and tunnel police and town constables, of every district attorney, of every probation agency; and of head of every institution or department, state, county and local, dealing with criminals and of every other officer, person or agency, dealing with crimes or criminals or with delinquency or delinquents, to transmit to the commissioner [Division of Criminal Justice Services]” information regarding “the offense for which the person was arrested, the county within which the arrest was made and the accusatory instrument filed, the disposition of the accusatory instrument including, but not limited to, as the *623 case may be, dismissal, acquittal, the offense to which the defendant pled guilty, the offense the defendant was convicted of after trial, and the sentence.”
Accordingly, the defendant’s rap sheet is also admissible as a business record (distinct of its admissibility as a public record, discussed above).
The Complainant/Detective’s Reference to GOMU Records Constitutes a First-Party Assertion
Relatedly, the complainant/detective attests in the information that she is assigned to GOMU, and that her review of GOMU records — of which she is a custodian — reveals that the defendant failed to register personally with GOMU within 48 hours of release from incarceration. Given that attestation— consistent with the rap sheet — and taken in conjunction with the rap sheet’s dual status as a public and business record, the court finds ample support to conclude that the accusatory instrument contains no hearsay assertions and is to be deemed an information in unqualified fashion.[1]
Therefore, the information sets forth nonhearsay allegations of fact supporting each element of the crime charged.
*624 GORA is Not Preempted by State Law
Defendant’s counsel incorrectly contends that GORA is preempted by the New York State Executive Law. Said counsel contends that, by establishing the Division of Parole, the State occupied the entire field of postrelease supervision of criminal offenders. However, parole monitoring ensures the parolees’ compliance with their conditions of release — which are a part of the parolee’s sentence. GORA monitoring does not hinder the operation of the State’s parole scheme; but, rather, complements it in providing limited additional oversight to a group of offenders who have been found to pose an increased risk of danger to the people of New York City.
“The constitutional home rule provision confers broad police power upon local government relating to the welfare of its citizens. However, it places two firm restrictions on their use: (1) the local government (here, the City of New York) may not exercise its police power by adopting a local law inconsistent with constitutional or general law; and (2) the City may not exercise its police power when the Legislature has restricted such an exercise by preempting the area of regulation” (New York State Club Assn. v City of New York, 69 NY2d 211, 217 [1987] [citations omitted], affd 487 US 1 [1988]; see also General City Law § 20 [13] [every city is empowered to maintain order, enforce the laws, protect property and preserve and care for the safety, health, comfort and general welfare of the inhabitants of the city and visitors thereto; and for any of said purposes to regulate and license occupations and businesses]; General City Law § 20 [21] [every city is empowered to investigate and inquire into all matters of concern to the city or its inhabitants, and to require and enforce by subpoena the attendance of witnesses at such investigations]).
“Where the State has demonstrated its intent to preempt an entire field and preclude any further local regulation, local law regulating the same subject matter is considered inconsistent and will not be given effect. This finding of preemption is justified by the belief that such laws, were they permitted to operate in a field preempted by State *625 law, would tend to inhibit the operation of the State’s general law and thereby thwart the operation of the State’s overriding policy concerns. The Legislature’s intent to so preempt a particular area can be inferred from a declaration of policy or from a comprehensive or detailed scheme in a given area. That the State and local laws touch upon the same area is insufficient to support a determination that the State has preempted the entire field of regulation in a given area” (Incorporated Vil. of Nyack v Daytop Vil., 78 NY2d 500, 505 [1991] [citations, brackets, and internal quotation marks omitted; emphasis added]).
“A statute which creates a crime is a valid exercise of the police power of the State so long as there is a reasonable relationship between the public welfare and the act proscribed. Where the State has delegated the power to exercise the police power to a municipality ... its ordinances are entitled to the same presumption of constitutionality as are those of the State itself” (People v Judiz, 38 NY2d 529, 531 [1976]).
Where state law evinces an intent to cover a category broadly, and the city ordinance is aimed at the prevention of a particular type of abuse, it follows that state law is neither at odds with, or exclusive of, the ordinance in question (see Judiz at 532). The Executive Law broadly regulates the release of inmates convicted of a wide variety of crimes and their supervision during the pendency of their sentences, whereas GORA provides for the registration of a narrow category of offenders, and is designed to protect against the unique dangers they pose to the people of New York City.[2] As in Judiz, neither the state law nor GORA depends on the other, nor are they inconsistent with one another.
State statutes do not evince an intention to preempt the entire field of post incarceration monitoring of parolees. Under New York’s statutory scheme, the Board of Parole has three *626 primary responsibilities: (i) screening of inmates being considered for release; (ii) establishing the conditions of release; and (iii) revoking a releasee’s community supervision upon violation of a condition of release (see Department of Corrections & Community Supervision, Board of Parole, Directive No. 8600 [2015]). A person released on parole “shall be under the supervision of the state department of corrections and community supervision for a period equal to the unserved portion of the term, maximum term, aggregate maximum term, or period of post-release supervision” (Penal Law § 70.40 [1] [b]). A person serving a definite sentence of imprisonment with a term in excess of 90 days who is conditionally released shall be under supervision for a period of one year (see Penal Law § 70.40 [2]). Accordingly, the state scheme for the monitoring of parolees is limited in both scope (ensuring compliance with the conditions of release) and time. Absent declaration of policy to the contrary, such a scheme is not so comprehensive and detailed that it demonstrated its intent to preempt an entire field and preclude any further local regulation (see People v Cook, 34 NY2d 100 [1974] [where the State had not spoken through its own laws in relation to price differentials based on tar and nicotine content, a municipal law requiring such a price differential was not preempted. The fact that the State also taxes cigarettes has no significant relation to the price-differential aspect of the City’s enactment, and, therefore, cannot be said to create an inconsistency]; cf. Robin v Incorporated Vil. of Hempstead, 30 NY2d 347 [1972] [declaration of policy, legislative history, and the legislative scheme demonstrated the State’s purpose and design to preempt the subject of abortion legislation and occupy the entire field so as to prohibit additional regulation by local authorities in the same area]).
Furthermore, parole is a component of the defendant’s sentence (see CPL 410.91 [1] [“A sentence of parole supervision is an indeterminate sentence of imprisonment, or a determinate sentence of imprisonment”]; Penal Law § 70.40 [1] [a] [“Release on parole shall be in the discretion of the state board of parole, and such person shall continue service of his or her sentence or sentences while on parole”]). On the other hand, “the registration of a gun offender is an administrative matter between the City of New York, the NYPD, and the offender, not a component of a gun offender’s sentence to be imposed by the sentencing court” (People v Smith, 15 NY3d 669, 673 [2010]). “GORA’s *627 registration and notice requirements, like SORA’s,[3] are not a ‘traditional, technical or integral’ part of defendant’s sentence or subsumed within the judgment of conviction” (Smith at 673). Importantly, in addition to providing monitoring, parole places numerous restrictions on a person’s liberty,[4] and monitoring of the parolee ensures compliance with his or her conditions of release (see 9 NYCRR 8004.1 [“A person who fails to comply with the terms of his release may be declared delinquent and may thereafter be returned to an appropriate correctional facility”]). By contrast, GORA does not purport to inhibit releasees in any remotely comparable manner. Moreover, a GORA violation constitutes a new crime for which the defendant must be prosecuted, with the attendant protections and rights associated therewith. Even if state law were to preempt the field regarding monitoring of parolees as to compliance with the terms of their releases, this does not extend to non-sentence aspects of releasees’ lives (see Eric M. Berman, P.C. v City of New York, 25 NY3d 684, 692 [2015] [“Although the courts may have preempted the field of regulating attorney misconduct, that authority does not extend to all nonlegal aspects of attorney behavior, which can be governed by both civil and criminal law, including regulatory proscriptions”]; see also Hertz Corp. v City of New York, 80 NY2d 565, 569 [1992] [New York City Administrative Code provision prohibiting discriminatory pricing based upon county of residence was not preempted by state law where the state laws prohibiting discriminatory pricing did not address the question whether rental vehicle companies can charge rental fees based on area of residency within the state, and the state laws do not establish that the state legislature enacted a comprehensive and detailed regulatory scheme in the field]).
Consequently, GORA does not infringe upon the province of parole, in that GORA is not concerned with ensuring compliance with a defendant’s terms of sentence. Accordingly, Administrative Code § 10-603 (d) (i) is a valid exercise of the City’s police power, which is narrowly tailored to protect *628 against a unique danger, and seeks to prevent the commission of additional crimes and aid in the apprehension of those who commit serious offenses. GORA is not preempted by state law because the legislative scheme is not so comprehensive as to occupy the field, and because GORA does not infringe upon the province of parole, which ensures a parolee’s compliance with the terms of his or her sentence.
Bill of Particulars; Discovery
The defendant seeks a bill of particulars and discovery. Subsequent to service of the present motion, the people served a bill of particulars and voluntary disclosure form. Accordingly, this branch of the defendant’s motion is denied as moot, without prejudice to renew as to any further discovery that may be demonstrated to be warranted prior to trial.
Preclusion of Use of Prior Bad Acts
The defendant moves to preclude the use at trial of evidence of defendant’s prior criminal convictions, arrests, or bad acts. The defendant requests, pursuant to People v Molineux (168 NY 264 [1901]), that the prosecution give notice of any prior convictions or bad acts which it intends to introduce at trial. Alternatively, defendant seeks a hearing pursuant to People v Sandoval (34 NY2d 371 [1974]). This branch of the defendant’s motion is reserved to the trial court.
Conclusion
Accordingly, for the reasons stated herein, it is hereby ordered that defendant’s motion to dismiss the information is denied in its entirety; and it is further ordered that the defendant’s motion to compel the people to serve a bill of particulars is denied as moot; and it is further ordered that the defendant’s motion to compel the people to provide discovery is denied as moot, without prejudice to renew as to any further discovery that may be demonstrated to be warranted prior to trial; and it is further ordered that the branch of the motion seeking Mo-lineux and Sandoval hearings is reserved for the trial court.

. The court is aware of a contrary conclusion by a court of coordinate jurisdiction, to the effect that conversion in these circumstances can only be attained through the extrinsic submission of GOMU records recited by the complainant, despite their status, as conceded by such court, as a business record (see People v Olivero, 27 Misc 3d 1218[A], 2010 NY Slip Op 50794[U] [Crim Ct, NY County 2010], referencing People v Tisdale, 18 Misc 3d 1125[A], 2008 NY Slip Op 50201 [U] [Crim Ct, Kings County 2008], and People v Ross, 12 Misc 3d 755 [Crim Ct, Kings County 2006]). Other opinions (even within said referenced decisions’ own jurisdiction [Kings County]) disagree (see People v Wilson, 27 Misc 3d 1049 [Crim Ct, Kings County 2010]; People v Vialva, 23 Misc 3d 1105[A], 2009 NY Slip Op 50594[U] [Crim Ct, Kings County 2009]; see also People v Lopez, 34 Misc 3d 476 [Crim Ct, Richmond County 2011]). As observed by the court in Wilson (at 1054), the Court of Appeals in “Casey held that a non-hearsay requirement is met so long as the allegation would be admissible under some hearsay rule exception (see People v Casey, 95 NY2d 354, 361 [2000] [emphasis added])” (see also Lopez at 479 [rejecting Ross and similar decisions “because the decisions have no legal basis for the action they propose and thus extending the corroboration rule to the sufficiency of informations is an unwarranted and legally unsupported judicial expansion of the pleading requirements”]). The undersigned is aligned with the opinions of those aforesaid criminal courts (Wilson; Vialva; Lopez) and, therefore, will not impose any additional requirement to submit copies of business or public records recited firsthand by a complainant in a misdemeanor accusatory instrument, for conversion purposes (certified or not).

. “The Council of the City of New York finds that people who have been convicted of felony gun offenses pose unique dangers to the people of this City and should, therefore, be monitored to prevent them from reoffending and to ensure their prompt apprehension if they do commit further crimes” (Local Law No. 29 [2006] of City of NY § 1; accord People v Minott, 41 Misc 3d 1002 [Crim Ct, NY County 2013] [referencing GORA’s legislative history]).

. The New York State Sex Offender Registration Act (SORA) (Correction Law § 168 et seq.).

. Parolees may not leave the state without written permission of the parole officer, fraternize with any person known to have a criminal record, or own or possess a gun or other deadly weapon. Furthermore, parolees must allow their parole officer to search their person, residence, and property. Additionally, parolees give up their right to resist extradition should they leave the State of New York (see 9 NYCRR 8003.2).